No. 27282

**The People of the State of Colorado, ex rel.
J. D. MacFarlane, Attorney General v. Carl L. Harthun**

(581 P.2d 716)

Decided February 21, 1978.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edwin L. Felter, Jr., Assistant, for complainant.

Levine, Pitler & Westerfeld, P.C., Robert L. Pitler, for respondent.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The respondent, Carl L. Harthun, was suspended from the practice of law while proceedings were pending against him involving a long list of violations of the Code of Professional Responsibility, interlaced with allegations of criminal conduct. Pursuant to C.R.C.P. 259(E), the allegations regarding criminal conduct were deferred pending determination of the issue of guilt in the criminal court. The respondent subsequently pled guilty and was sentenced for crimes which were tied to his defalcation and theft of a client's funds. Thereafter, a hearing was set as to the criminal charges, pursuant to Rule 258. The respondent is presently working in an ice cream parlor, having been granted the privilege to participate in a work-release program.

The conduct of the respondent has been exacerbated by the respondent's conduct relating to his former clients. A master was appointed by the court, heard testimony, and held an extended hearing regarding the respondent's refusal to return files to clients on the basis of his assertion oₓ

an attorney's lien.

On December 2, 1977, the special master submitted findings and recommmendations to the court. The respondent did not comply with the spirit of the order and required an additional order from the master. Following an additional hearing, the master recommended that this court enter an order relating to certain files which were being withheld by the respondent. The following order was entered on January 13, 1978:

"Respondent is hereby ordered and directed to turn over, within a period of fifteen (15) days following the date of this Order, all files and papers, except his own work product, as has been requested, to former clients Thelma N. Marple, Margaret Davis, Victoria Wood, Georgia Cory, and James Culpepper; and, likewise to turn over, within a fifteen (15) day period, after written request is made to him by any other former client, that client's files and papers, except Respondent's own product. If Respondent is unable, for any reason, to locate or to deliver any file or papers, as requested, he shall, within ten (10) days after the fifteen (15) day period ends, report such fact to this Court in writing, setting forth his reasons therefor and why he should not be held in contempt of this Court for his failure to so act. The release of such files shall not, however, prejudice Respondent's rights, if any, to assert any alleged claims he may have for unpaid fees or costs."

Contemporaneously with the entry of the order, we indicated that an opinion would be rendered as to the issues in this case.

The delays imposed by the respondent upon his clients' efforts to secure redress in the courts are deplorable and cannot be tolerated. His conduct serves as an egregious model for those who elect to disregard the Code of Professional Responsibility and the fiduciary duty which exists between attorney and client. In connection with the entry of the order by this court, it is necessary that we render an opinion to prevent further abuse of an attorney's lien procedure, such as occurred in this case.

The General Assembly has enacted two statutes establishing attorneys' liens. Sections 12-5-119, 120, C.R.S. 1973. The legislature thereby created two types of liens commonly referred to as "charging liens" and "retaining liens." *Collins v. Thuringer,* 92 Colo. 433, 21 P.2d 709 (1933). The respondent asserts a "retaining lien" in the files of his clients under section 12-5-120, C.R.S. 1973:

"*12-5-120. Other property to which lien attaches.* An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession in the course of his professional employment and upon money due to his client in the hands of the adverse party in an action or proceeding in which the attorney was employed from the time of giving notice of the lien to that party."

We have previously held that the statutory "charging lien," section 12-5-119, C.R.S. 1973, attaches immediately upon the obtainment

of a judgment. The "charging lien" statute automatically gives the attorney a lien on the judgment to the extent of his reasonable fees, remaining due and unpaid, for professional services rendered in obtaining the judgment. Once a judgment is secured, as between attorney and client, nothing more need be done to cause the lien to be enforceable. However, before the lien can be enforced against third parties, notice must be given. *Collins v. Thuringer, supra; Johnson v. McMillan,* 13 Colo. 423, 22 P. 769 (1889); *Boston and Colorado Smelting Co. v. Pless,* 9 Colo. 112, 10 P. 652 (1885).

The principles established in connection with the "charging lien" apply equally well to "retaining liens." The statute provides that an "attorney *has* a lien for a general balance of compensation upon any papers of his client." This language can only be construed to mean that a lien attaches to the client's papers once an attorney has completed compensable work.

An attorney's ability to assert his lien can be waived or lost. *Fillmore v. Wells,* 10 Colo. 228, 15 P. 343 (1887). When an attorney is discharged or removed from a particular case for professional misconduct in the handling of his client's affairs, he has no right to assert a "retaining lien" as to that client's papers which are in his possession. *First National Bank of Cincinnati v. Pepper,* 454 F.2d 626 (2d Cir. 1972); *Kent v. Baker,* 31 Misc.2d 840, 221 N.Y.S.2d 471 (Sup.Ct. 1961); *In re Weitling,* 266 N.Y. 184, 194 N.E. 401 (1935). Misconduct in a particular case, if suspension or disbarment is not involved, should not, however, result in the loss of an attorney's ability to assert his lien in other cases where professional misconduct is not involved. An attorney's loss of a "retaining lien" upon the files of clients who have received legal services which were rendered in a manner consistent with the high standards of the profession, would be an inordinate and unwarranted penalty.

A different result, however, is justified and required when an attorney is suspended or disbarred. The foundation of our profession is based upon honor, trust, and the highest standards of integrity. *People v. Radinsky,* 176 Colo. 357, 490 P.2d 951 (1971). It is our solemn duty to regulate the practice of law and to maintain the integrity of the profession by disciplining attorneys who indulge in practices inconsistent with the high ethical standards of our profession. *People v. Radinsky, supra; People v. Buckles,* 167 Colo. 64, 453 P.2d 404, (1968); *see In re Bogart,* 9 Cal.3d 743, 511 P.2d 1167, 108 Cal.Rptr. 815 (1973).

An attorney who has been suspended or disbarred must take certain actions to protect the interests of his clients. C.R.C.P. 255 requires that a suspended or disbarred attorney must promptly notify all clients involved in "pending matters," C.R.C.P. 255(A), and those involved in "litigated or administrative proceedings," C.R.C.P. 255(B), of his suspension or disbarment and must advise them to seek legal advice and

representation elsewhere. Additional duties which a suspended or disbarred attorney must fulfill are contained in the Code of Professional Responsibility to which Colorado attorneys are bound. C.R.C.P. 223. Disciplinary Rule (DR) 2-110(A)(2) of the Code provides that an attorney who withdraws from the representation of a client must deliver "to the client all papers and property to which the client is entitled." Moreover, DR 7-101(A)(3) contains a prohibition against intentionally prejudicing or damaging a client during the course of the professional relationship.

The thrust of our rules is that a suspended or disbarred attorney must take such actions as are necessary to insure that the interests of his active clients are not likely to suffer further injury as a result of the disciplinary action. The return of a client's files upon the client's request is essential to the protection of the client's interests and rights. The attorney's ability to assert a "retaining lien" upon his client's files must yield to the interest of the client in a situation created by the attorney's serious misconduct which has resulted in suspension or disbarment. We hold that the statutory privilege afforded practicing attorneys to assert a "retaining lien" is, therefore, waived by conduct that results in suspension or disbarment. The release of a client's files, however, does not prejudice the attorney's right, if any, to assert any alleged claim he may have for unpaid fees or cost.

Accordingly, the respondent is ordered to relinquish the files of his former clients in accordance with the order of this court, and should he fail to do so, he will be required to show cause why he should not be punished for contempt of this court.