In re OILTECH, INC., a Nevada corporation, Debtor.

OILTECH, INC., Plaintiff,

v.

NELSON & HARDING, Defendant,

and

Keene, Munsinger & Stuckey, Nominal Defendant.

Bankruptcy No. BK–R–82–999.
Adv. No. 83–182.

United States Bankruptcy Court, D. Nevada.

March 19, 1984.

Stephen Harris and Jeffrey Hartman, Stephen Harris, Ltd., Reno, Nev., for plaintiff.

Bruce Anderson, Nelson & Harding, Denver, Colo., for defendant.

Stephen M. Munsinger, Keene, Munsinger & Stuckey, Denver, Colo., for nominal defendant.

## ORDER

ROBERT C. JONES, Bankruptcy Judge.

*Background*

On 19 April 1983 the then debtor in possession, Oiltech, Inc. (debtor), filed the above-styled 11 U.S.C. § 542 turnover complaint against its former corporate counsel, Nelson & Harding (N & H) and nominal defendant, Keene, Munsinger & Stuckey (KM & S). The property the debtor seeks to recover includes a $30,000.00 deposit held by KM & S in an interest-bearing account, and $7,000.00 held by N & H in its client trust account.

The $7,000.00 came into N & H's possession during the course of its pre-petition representation of Oiltech in a lawsuit against a third party, and was paid to N & H on behalf of the debtor in settlement of that lawsuit. The $30,000.00 arose in a less conventional way. In February 1982 N & H withdrew as Oiltech's counsel and notified its client of the attorney's lien it was asserting against all of Oiltech's files, records and documents in N & H's possession and the $7,000.00 in its trust account. These liens were asserted to secure the payment of $37,713.04 in fees. Oiltech refused to pay, disputing the amount due N & H, and the law firm filed suit in Colorado state court to recover its fees. Before this suit was resolved, Oiltech found itself in a difficult position—the files in N & H's pos-

session were necessary to complete Oiltech's Form 10K filing for 1981. In order to obtain the files and maintain the lawsuit's status quo, Oiltech and N & H joined in a stipulation that provided for the release of the files to Oiltech's securities lawyers upon the deposit of $30,000.00 into KM & S's trust account (KM & S was Oiltech's counsel in the state court action with N & H). This stipulation expressly allowed N & H to recover from either the $7,000.00 or $30,000.00 or both any amount adjudged due in the state court matter.

Following this June 1982 stipulation Oiltech filed for Chapter 11 relief in this district. N & H filed a timely proof of claim for its pre-petition fees and the debtor filed an objection to the claim. The debtor's reorganization plan confirmed on 6 October 1983 reserved to the Court jurisdiction to determine the amount of contested claims, and following a November 1983 claim objection hearing the Court allowed N & H's claim in the amount of $33,752.30.

The question to be resolved by this adversary proceeding[1] is whether the $33,752.30 claim is secured or unsecured. This issue, which both sides agree is dependent upon the validity of the asserted attorney's liens, will dictate the claim's treatment under Oiltech's confirmed reorganization plan or otherwise applicable law.[2]

*Discussion*

Colorado law allows for the creation of two different attorney's liens—a "charging lien" and a "retaining lien." *People ex rel. MacFarlane v. Harthun*, 195 Colo. 38, 581 P.2d 716 (1978). As creatures of statute they are set forth in COLO.REV.STAT. §§ 12–5–119 and 120:

12–5–119. All attorneys- and counselors-at-law shall have a lien on any money, property, choses in action, or claims and demands in their hands, on any judgment they may have obtained or assisted in obtaining, in whole or in part, and on

---

1. Rather than try this complaint, it has been submitted for the Court's decision on the pleadings and the briefs of counsel.

2. The rights of N & H as a secured creditor were not treated by the debtor's plan. N & H's claim was treated as wholly disputed, with any allowed amount to be treated as a Class 11 unsecured claim.

any and all claims and demands in suit for any fees or balance of fees due or to become due from any client. In the case of demands in suit and in the case of judgments obtained in whole or in part by any attorney, such attorney may file, with the clerk of the court wherein such cause is pending, notice of his claim as lienor, setting forth specifically the agreement of compensation between such attorney and his client, which notice, duly entered of record, shall be notice to all persons and to all parties, including the judgment creditor, to all persons in the case against whom a demand exists, and to all persons claiming by, through, or under any person having a demand in suit or having obtained a judgment that the attorney whose appearance is thus entered has a first lien on such demand in suit or on such judgment for the amount of his fees. Such notice of lien shall not be presented in any manner to the jury in the case in which the same is filed. Such lien may be enforced by the proper civil action. 12–5–120. An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession in the course of his professional employment and upon money due to his client in the hands of the adverse party in an action or proceeding in which the attorney was employed from the time of giving notice of the lien to that party.

While analyzing this present statute's predecessor (both are nearly identical), the Colorado Supreme Court described the distinct difference between the two types of liens—

[A] general, retaining or possessory lien, and a special, particular, or charging lien. The former attaches to all papers, books, documents, securities, and money coming into an attorney's possession in the course of his professional employment. The attorney has a right to retain them in his possession until the general balance due him for legal services is paid, whether such services grew out of the special matters then in his hands, or other legal matters. The right to the special, particular, or charging lien, on the other hand, rests, not on possession, but on the equity of an attorney to be paid his fees and disbursements out of the judgment obtained as a result of his service and skill.

*Collins v. Thuringer,* 92 Colo. 433, 21 P.2d 709, 710 (1933) quoted in *Donaldson, Hoffman & Goldstein v. Gaudio,* 260 F.2d 333, 335 (10th Cir.1958). The *Gaudio* court reiterated a principal point made in *Collins* by holding that a charging lien "could not attach for services in matters not involved in the suit.... This is consistent with the view that under the statute no lien attaches until the claim is in suit." *Id.* at 336–37. Furthermore, a "claim does not become 'in suit' through threat of actions nor preparatory services rendered in contemplation of suit. [Rather, there must be a] proceeding commenced in a court of justice." *Id.* In addition to the "actual suit" prerequisite for attachment of the lien, for the charging lien to be enforceable "against third parties, notice must be given." *MacFarlane,* 581 P.2d at 718. This is the record notice procedure described in § 12–5–119 (notice of claim filed with the court in which the action is pending.)

■ Unlike the charging lien, the statute does *not* condition the enforceability of the retaining lien against third parties upon the requirement of notice. In its brief discussion of retaining liens, the *MacFarlane* court observed: "The statute provides that an 'attorney *has* a lien for a general balance of compensation upon any papers of his client.' This language can only be construed to mean that a lien attaches to the client's papers once an attorney has completed compensable work." *Id.* at 718 (emphasis in original). The court made no mention of notice and, indeed, this Court can perceive no purpose for such a requirement. A competing third party creditor would certainly be placed on inquiry notice of any possible lien asserted by an attorney upon the client's files, records, money, or other property in the attorney's possession. The *MacFarlane* opinion's statement that

"[t]he principles established in connection with the 'charging lien' apply equally well to 'retaining liens,'" *id.*, read in context, refers only to the attachment of such liens, not to their perfection as to third parties.

■ Since the $7,000.00 was in N & H's possession at a time when compensable work had been completed, a retaining or possessory attorney's lien in favor of N & H attached to this property. Although the money was due N & H's client (Oiltech) it was not in the hands of the adverse party to the suit and, therefore, a charging lien was not created. This retaining lien was wholly effective (perfected) as to third parties such as a trustee or debtor in possession when Oiltech's Chapter 11 petition was filed, and remains so. As such, 11 U.S.C. § 545(2), which provides for the avoidance of certain unperfected statutory liens, has no effect.

■ Likewise, at least a portion of the $30,000.00 is the object of a valid retaining lien. This fund was, by N & H's own admission, designed as "substitute collateral" and posted by the debtor to replace the books, records, and files Oiltech needed for its securities work and to preserve the Colorado lawsuit's status quo. The lien attaching to the substitute collateral is of the same character as and can be accorded no greater dignity than the lien attaching to the original collateral, and the parties have not argued the contrary. Clearly, there was a retaining lien on the books, records, and files possessed by N & H; therefore, the lien attached to the cash upon its substitution. However, the value of this particular attorney's lien is subject to some question because of 11 U.S.C. § 542(e).[3]

Section 542(e) reads: "Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to disclose such recorded information to the trustee." The corresponding legislative history says "[s]ubsection (e) ... is a new provision *that deprives accountants and attorneys of the leverage that they have today, under State law lien provisions, to receive payment in full ahead of other creditors* when the information they hold is necessary to the administration of the estate." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 369–70 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 84 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6325 (emphasis added). while the statute is designed to deprive such creditors the leverage[4] they would otherwise enjoy to receive immediate payment (conceivably, an attorney could hold records necessary for preparation of the debtor's bankruptcy schedules), neither the statute nor the legislative history shows an intent to render such liens void. While such lienors must "wait in line" with other similarly situated creditors, their security interest is entitled to protection. The difficult question is how the payment of pre-petition attorney's fees is secured and protected once the leverage is elilminated. If the books and records are turned over, to what property, if any, does the lien attach? How is the lienor's interest in the property adequately protected? How is eventual payment assured?

---

**3.** Since the $30,000.00 was "substitute" collateral, this Court will analyze this second lien's treatment as if the liened property were still the books, records, and files. This approach is consistent with the parties' stipulation to not alter their respective legal positions pending resolution of the disputed fees. Also, the substitute collateral or security was a product of the very leverage Congress sought to eliminate by enacting § 542(e). See discussion, *infra.* Furthermore, the 10K report compiled with the aid of the books, records, and files was prepared shortly before the debtor filed its Chapter 11 petition.

This report was used to satisfy part of the adequate disclosure requirements of 11 U.S.C. § 1125, thereby contributing to confirmation of the plan. Accordingly, the recorded information returned to the debtor was necessary to the estate's administration.

**4.** Possessory, retaining liens are passive. They entitled the lienor to hold the property until payment but they do not include the right to foreclose. *Browy v. Brannon,* 527 F.2d 799 (7th Cir.1976) (Illinois retaining lien).

At least two cases applying law antedating § 542(e) have addressed this problem—how to protect the attorney's lien once the security has been surrendered to the debtor. In *Browy v. Brannon,* 527 F.2d 799 (7th Cir.1976), the court vacated a bankruptcy court order requiring the bankrupt's pre-petition attorney to bring the bankrupt's corporate records to a Bankruptcy Rule 205 examination. The lower court had ruled that the attorney's retaining lien was subservient to the trustee's need to examine the records. As the circuit court framed the issue, the contest was between the attorney's right "to payment of his fees, evidenced by the lien, against the needs of the judicially supervised bankruptcy proceeding to inquire into the transactions of the bankrupt." *Id.* at 800. The court accommodated both interests by allowing surrender of the records "subject to an order of the bankruptcy court preserving the attorney's priority afforded by his lien." *Id.* at 801. The court said "[t]his result *adequately protects* [the attorney's] interest in receiving his fees. Valid liens must be paid before the assets of the bankruptcy can be distributed to the creditors." *Id.* at 802 (emphasis added). The court reasoned thus because in that particular case it was acknowledged that the "proceedings will culminate with the distribution of assets." *Id.* at n. 7. Although the opinion's body does not clearly state how the secured creditor's priority was to be preserved, it apparently was to be accomplished through the use of a replacement lien—in footnote seven the court reiterates its position that the attorney's rights will be protected "[b]ecause the attorney's leverage has been replaced with a valid lien." In *Matter of Kaleidoscope, Inc.,* 15 B.R. 232 (Bkrtcy.N.D.Ga.1981), a bankruptcy court reached a similar result—protecting the lienor's interest in receiving payment. A law firm with a retaining lien on corporate records for pre-petition fees was ordered to surrender possession of the records to the debtor and, in turn, the firm's claim was "to be treated as an expense of administrati[ve] priority" once the court determined what amount of fees

were due and owing. *Id.* at 246–47. Although providing adequate protection of a creditor's interest in property by granting an administrative expense priority is now expressly prohibited by 11 U.S.C. § 361(3), the replacement lien device remains approved. 11 U.S.C. § 361(2).

More recently, two bankruptcy court decisions have dealt with the adequate protection, after a § 542(e) turnover, of the interest in property of one holding a retaining lien. In *In re Beef n' Burgundy, Inc.,* 21 B.R. 69 (Bkrtcy.N.D.Ga.1982), the court explained that

> [s]ection 542(e) provides the procedural basis to enable the Chapter 11 estate to get necessary and material information and this can be accomplished without any unnecessary impairment of the substantive property rights of these former attorneys of the debtor by providing them, in lieu of prior payment in full, with adequate protection for the ultimate payment of the *value of their statutory lien.*

*Id.* at 71 (emphasis added). The court then required that the books and records be turned over to the debtor, and announced its plan to schedule an evidentiary hearing to determine "what form of protection is necessary and appropriate to protect the rights of this claimant." *Id.* Presumably, the value of the lien was to be determined at the future hearing. As it stood, the court had avoided for a time the very heart of the problem—placing a value on a retaining lien post-turnover.

In a bankruptcy court decision involving the same Colorado statute operative here, *In re Life Imaging Corp.,* 31 B.R. 101 (Bkrtcy.D.Colo.1983), the attorneys/lienors filed a motion for a protective order seeking adequate protection of their interest (the lien) in the debtor's files. The lienors valued their lien at $85,000.00—the full amount of the pre-petition fees owed by the debtor. The court cited the same legislative history noted above and interpreted it as "merely indicat[ing] that Congress desired to deprive attorneys of the ability to receive payment *in full prior* to turning

over information that is necessary to the administration of the estate." *Id.* at 102 (emphasis in the original). The court agreement that § 542(e) mandated turnover under the circumstances but only upon the condition of adequate protection of the lienors' interest in the debtor's files, which interest the court admitted was "difficult to quantify." *Id.* Of course, it is "difficult to quantify" because it is largely measured by the amount of leverage it provides the lienor, which in turn is a function of how badly the debtor needs the books, records, and files in the attorney's possession. The *Life Imaging* court said that it "would be overvaluing [the attorneys'] interest in the Debtor's property to provide them a replacement lien on unencumbered collateral for the full amount of their unpaid fees under § 361(2)," *id.* at 103, possibly because the debtor said it would rather do without the files than provide an $85,000.00 replacement lien. Without placing a specific value on the attorneys' lien, the court allowed the debtor to examine its files for needed documents and required cash payments to the lienors for each document copied or taken. The amount of the payments was to be "in an amount equal to the decrease in the value of [the attorneys'] interest. The decrease in value of [the attorneys'] interest shall be deemed to be that portion of unpaid attorney's fees attributable to the creation of the specific documents involved." *Id.* This novel approach undoubtedly resulted in adequate protection of an amount far less than the $85,000.00 sought by the creditors—particularly in view of the debtor's apparent ability or willingness to do without most if not all of the documents.

After the above case law review, this Court recognizes keenly the problematic task of valuing an attorney's lien and adequately protecting it. Although the present debtor posted $30,000.00 as replacement collateral and at the time apparently could not or did not wish to reconstruct its records in time for its 10K reports, the Court is reluctant to value the lien at $30,000.00. Rather than attempt, in a vacuum, to value the leverage or coercive

power N & H had over the debtor, the Court will schedule an evidentiary hearing to determine the value to the debtor of the books, records, and files once held by N & H. This hearing will be held at the earliest possible convenience of the Court and the parties, unless N & H and Oiltech can stipulate to a value.

*Conclusion*

N & H's $33,752.30 allowed claim is secured in part by a valid attorney's lien on the $7,000.00 in its trust account and by a further amount to be determined either by stipulation or by the Court. The funds presently held in the KM & S trust account shall remain pending further order of the Court. The $7,000.00 in the N & H trust account may be released to the creditor.