The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

2016 CO 43
Supreme Court Case No. 14SC1
Certiorari to the Colorado Court of Appeals
Court of Appeals Case No. 12CA1878
Petitioners:
Ramona Martinez and Stevens Law Offices,
v.
Respondents:
Mintz Law Firm, LLC and Eric Krajewski, Esq.
Judgment Reversed
en banc
May 31, 2016
Attorneys for Petitioners:
Fisher & Associates P.C. Jacob C. Eisenstein
Denver, Colorado
Attorneys for Respondents:
Mintz Law Firm, LLC
Robin E. Scully
Lakewood, Colorado
Attorney for Amicus Curiae Colorado Trial Lawyers Association:
Ogborn Mihm, LLC
Anna N. Martinez
Denver, Colorado
JUSTICE GABRIEL delivered the Opinion of the Court.
JUSTICE COATS dissents, and JUSTICE EID joins in the dissent.
JUSTICE MÁRQUEZ and JUSTICE HOOD do not participate.
¶1     This case presents several novel issues arising from a dispute regarding an
attorney’s charging lien. After a contingent fee plaintiff’s initial attorneys were discharged for cause and replaced by successor counsel, initial counsel asserted a lien against any settlement or judgment entered in the underlying action and in favor of the plaintiff. The underlying action was subsequently settled, and successor counsel filed a motion to void the lien. Initial counsel responded by moving to strike successor counsel’s motion and to compel arbitration, based on an arbitration clause contained in initial counsel’s contingent fee agreement with the plaintiff.
¶2     The district court ultimately concluded that this dispute was between initial and successor counsel, and thus, the arbitration clause contained in initial counsel’s contingent fee agreement with the plaintiff did not apply. Having thus determined that the matter was properly before it, the court proceeded to determine whether initial counsel was entitled to any of the fees that it was seeking to recover. The court concluded that initial counsel was not entitled to such fees because it had been discharged for cause, and under the express terms of the contingent fee agreement, it had forfeited the right to those fees.
¶3     Initial counsel appealed, and a division of the court of appeals reversed.
Martinez v. Mintz, No. 12CA1878, slip op. at 10 (Colo. App. Nov. 21, 2013). As pertinent here, the division concluded that the present dispute was between initial counsel and the plaintiff. Id. at 6. Accordingly, the division concluded that the matter was subject to arbitration and that the district court had erred in denying initial counsel’s motion to compel arbitration and in ruling on the merits of the issues presented. Id. at 8–9.
¶4     We granted certiorari and now reverse.[1] We conclude that successor counsel’s motion to void the lien at issue was properly filed in the underlying action and that the underlying action was a “proper civil action” within the meaning of section 12-5-119, C.R.S. (2015). In light of this determination, we further conclude that the lien dispute was between initial and successor counsel and that therefore, the matter (1) was not subject to arbitration pursuant to the arbitration clause in initial counsel’s contingent fee agreement with the plaintiff and (2) was properly before the district court. Finally, we conclude that the record supports the district court’s finding that initial counsel was not entitled to recover the fees that it was seeking.
¶5     Accordingly, we reverse the judgment of the court of appeals and remand thiscase for further proceedings consistent with this opinion.
I. Facts and Procedural History
¶6     After April Martinez fell in a stairwell at her apartment complex and injured her
knee, she hired the respondents, Mintz Law Firm, LLC and Eric Krajewski (collectively, “Mintz”), to represent her in a personal injury action. April later died from pulmonary emboli that had formed in her leg and moved into her lung.
¶7     Thereafter, April’s mother, petitioner Ramona Martinez (“Ms. Martinez”), retained Mintz to pursue a wrongful death action against the apartment complex, and Ms. Martinez and Mintz entered into a contingent fee agreement (the “Mintz-Martinez Agreement”) to document the engagement. As pertinent here, this agreement entitled Mintz to 33-1/3% of the gross recovery collected if the matter settled out of court. The agreement further provided, “In the event the Client terminates this contingent fee agreement without wrongful conduct by the Attorney which would cause the Attorney to forfeit any fee,” Mintz could ask the court to order Ms. Martinez to pay a fee based on the reasonable value of the services that Mintz had provided. And the agreement stated, “In the event of a dispute between Attorney and Client concerning any aspect of the Attorney/Client relationship including controversies over Attorney’s fees, . . . said dispute shall be submitted to final and binding arbitration pursuant to the Uniform Arbitration Act of 1975 as adopted by Colorado . . . .”
 
¶8     Prior to filing a lawsuit on Ms. Martinez’s behalf, Mintz received a $100,000 settlement offer from the apartment complex, but Mintz rejected that offer by making an $850,000 written counteroffer. (Ms. Martinez later testified that Mintz had rejected the offer without her authority.)
 
¶9     The apartment complex did not accept the counteroffer, and after a lengthy
delay, Mintz filed a wrongful death action on Ms. Martinez’s behalf against the complex. Several days later, however, Ms. Martinez discharged Mintz and hired petitioner Stevens Law Offices (“Stevens”) to represent her. Stevens notified Mintz in writing of Ms. Martinez’s decision, after which Mintz filed a notice of lien on any settlement or judgment entered in the wrongful death case and in favor of Ms. Martinez. The claimed lien was in the amount of $33,333.33 in attorney fees and $1,530.21 in costs. The fee amount was based on the $100,000 offer that Mintz had previously rejected.
¶10      Stevens proceeded to litigate Ms. Martinez’s wrongful death action and ultimately settled it for $110,000. Upon receipt of the settlement funds, Stevens deposited its 40% contractually agreed upon contingency fee into its trust account and disbursed the remaining 60%, less costs, to Ms. Martinez.
¶11      Thereafter, Stevens filed a motion in the underlying wrongful death action to void Mintz’s attorney’s lien. In response, Mintz filed a “Motion to Compel Arbitration and Motion to Strike Motion to Void Attorney’s Lien.” In these motions, Mintz argued that Stevens did not have standing to move to void the lien because the instant dispute was between Mintz and Ms. Martinez and not between Mintz and Stevens. Mintz further asserted that the dispute was subject to the arbitration clause in the Mintz-Martinez Agreement and that even if Stevens’ motion were amended to substitute Ms. Martinez as the movant, the court “must refer the dispute to arbitration as required by the contract and applicable Colorado law.”
 
¶12      The district court denied Mintz’s motions. The court noted that Mintz purported to hold an enforceable lien against all third parties, including Stevens. Thus, Stevens had standing to challenge the lien. In addition, the court found that the Mintz-Martinez Agreement did not purport to bind anyone other than Mintz and Ms. Martinez, and therefore, the arbitration clause did not apply to the present dispute. The court thus concluded that it had jurisdiction and ordered Mintz to file a response to Stevens’ motion to void Mintz’s attorney’s lien.
¶13      The matter proceeded to an evidentiary hearing after which the court reaffirmed its prior ruling that because the dispute was not between Ms. Martinez and Mintz, it was not subject to the arbitration clause. In addition, the court found that Mintz had been terminated for cause, and therefore, under the terms of the Mintz-Martinez Agreement, Mintz had forfeited any entitlement to attorney fees. Finally, the court found that Mintz’s lien on the settlement funds held by Stevens was frivolous, and the court awarded Stevens fees and costs.
¶14      Mintz appealed, and a division of the court of appeals reversed. Martinez, slip op. at 10. As pertinent here, the division concluded, contrary to the district court, that the dispute over the funds at issue was between Mintz and Ms. Martinez and not between Mintz and Stevens. Id. at 6. The division thus concluded that the arbitration clause of the Mintz-Martinez Agreement continued to apply and that “any issues regarding the reasonableness of the agreement and whether Mintz had forfeited its fee or had been terminated for cause were matters for the arbitrator.” Id. at 8–9.
¶15      We subsequently granted Ms. Martinez’s and Stevens’ petition for certiorari.
 
II. Analysis
¶16     Because the issue implicates the district court’s jurisdiction to hear the current
dispute, we first address whether the division erred in reversing the district court’s denial of Mintz’s motion to compel arbitration. We conclude that the district court correctly found that the dispute at issue was between Mintz and Stevens and not between Mintz and Ms. Martinez and that therefore, the arbitration clause in the Mintz-Martinez Agreement did not apply. We then address whether Ms. Martinez was personally liable to Mintz for the reasonable value of the services that it rendered under the Mintz-Martinez Agreement when, as here, Stevens received the full contingency fee. We conclude that because Mintz was discharged for cause, under the terms of the Mintz-Martinez Agreement, it was not entitled to fees.
A. Standard of Review
¶17      We review de novo the district court’s decision on a motion to compel arbitration, employing the same standards that the district court employed. Lujan v.  Life Care Ctrs. of Am., 222 P.3d 970, 972 (Colo. App. 2009). Similarly, to the extent that Stevens’ contentions require us to construe section 12-5-119, we construe those contentions de novo. See Klingsheim v. Cordell, 2016 CO 18, ¶ 14, ___ P.3d ___ (“Statutory interpretation is a question of law that we review de novo.”). And to the extent that Stevens’ contentions implicate the district court’s factual findings, we review such findings for clear error or an abuse of discretion, and we will not disturb those findings unless they are unsupported by the record. See In re Marriage of de Koning, 2016 CO 2, ¶ 17, 364 P.3d 494, 496; Page v. Clark, 592 P.2d 792, 796 (Colo. 1979).
 
B. Motion to Compel Arbitration
¶18      Stevens contends that the division erred in reversing the district court’s denial of Mintz’s motion to compel arbitration and its award of attorney fees and costs to Stevens. We agree.
¶19      As noted above, the division concluded that the present dispute is, in substance, between Mintz and Ms. Martinez. Martinez, slip op. at 6. Based on that premise, the division concluded that the arbitration clause contained in the Mintz-Martinez Agreement controls. Id. at 8–9. We respectfully disagree with the division’s premise.
¶20      The lien at issue was asserted against any settlement or judgment entered in the wrongful death action and in favor of Ms. Martinez, and as noted above, Stevens held funds subject to the lien and was entitled to some portion of those funds. See Gold v.  Duncan Ostrander & Dingess, P.C., 143 P.3d 1192, 1193 (Colo. App. 2006) (“An attorney’s lien attaches automatically to any monies or property due or owing to the client on any underlying judgment the attorney may have obtained or assisted in obtaining to the extent of the attorney’s reasonable fees remaining due and unpaid.”). Because the lien effectively froze assets that Stevens believed belonged to it, Stevens had standing to contest that lien. See Wainscott v. Centura Health Corp., 2014 COA 105, ¶¶ 12–21, 351 P.3d 513, 518–19 (concluding that the plaintiffs had standing to contest a lien against settlement funds to which they had a claim).
¶21      The question thus becomes whether Stevens properly filed its motion to void the lien in the present case. If it did, then the dispute, on its face, would be between Mintz and Stevens and not between Mintz and Ms. Martinez. See Law Offices of J.E. Losavio, Jr. v. Law Firm of Michael W. McDivitt, P.C., 865 P.2d 934, 935–37 (Colo. App. 1993) (noting that “[i]n the case of a dispute between attorneys, it is of no consequence that the client is the primary beneficiary of the legal services”). If, conversely, only Mintz or Ms. Martinez could properly take action to enforce or contest the lien, then the dispute would arguably be between them. We conclude that Stevens properly filed its motion in this case.
¶22      Section 12-5-119 concerns attorney’s liens like that at issue here and provides, in pertinent part:
 
All attorneys- and counselors-at-law shall have a lien on any money, property, choses in action, or claims and demands in their hands, on any judgment they may have obtained or assisted in obtaining, in whole or in part, and on any and all claims and demands in suit for any fees or balance of fees due or to become due from any client. In the case of demands in suit and in the case of judgments obtained in whole or in part by any attorney, such attorney may file, with the clerk of the court wherein such cause is pending, notice of his claim as lienor, setting forth specifically the agreement of compensation between such attorney and his client, which notice, duly entered of record, shall be notice to all persons and to all parties, including the judgment creditor, to all persons in the case against whom a demand exists, and to all persons claiming by, through, or under any person having a demand in suit or having obtained a judgment that the attorney whose appearance is thus entered has a first lien on such demand in suit or on such judgment for the amount of his fees. . . . Such lien may be enforced by the proper civil action.

(emphasis added); see also In re Ranes, 31 B.R. 70, 72 (Bankr. D. Colo. 1983) (noting that a charging lien attaches immediately upon the obtaining of a judgment and that if the attorney files a notice with the court, then the lien becomes enforceable against third parties).
¶23      Section 12-5-119 does not specify the procedure for enforcing an attorney’s lien. See Gold, 143 P.3d at 1193. We have long held, however, that such a lien may be enforced either in an independent action or in the action in which the attorney performed the services. Gee v. Crabtree, 560 P.2d 835, 836 (Colo. 1977).
¶24      In light of the foregoing, it is indisputable that an attorney can enforce his or her own lien in the underlying civil action. The question presented here is whether an attorney who holds funds against which another attorney’s charging lien is asserted can challenge the lien by filing a motion in that action. We conclude that the objecting attorney can do so.
¶25      Although no published Colorado state appellate case appears to have addressed this issue, the United States District Court for the District of Colorado addressed a substantially similar question in Dietz v. University of Denver, Nos. 95-cv-02756-WDM-OES, 97-cv-00897-WDM-OES, 2011 WL 723118 (D. Colo. Feb. 22, 2011).
¶26      In Dietz, 2011 WL 723118, at *1, the plaintiff retained attorney Johnson to handle the plaintiff’s discrimination lawsuit against the University of Denver. After Johnson had billed substantial time on the case, she was allowed to withdraw and then filed a notice of attorney’s lien for the amount of fees and costs that she claimed the plaintiff owed her. Id. at *4–5. On the same day, successor counsel entered its appearance on the plaintiff’s behalf. Id. at *5.
¶27      Subsequently, the parties settled the underlying lawsuit, and they stipulated that they would deposit the settlement funds into the court’s registry, to allow the plaintiff to contest the validity or reasonableness of Johnson’s lien. Id. 
¶28      Thereafter, the plaintiff moved to dismiss Johnson’s lien, arguing that Johnson’s billing was “outrageous” and that the lien was “an abuse of process and frivolous.” Id. The matter was referred to a magistrate judge for a ruling or recommendation, and the magistrate judge ultimately denied the motion and awarded Johnson the amount of her lien claim plus accrued interest. Id. at *5–6. The plaintiff then filed with the district court an objection to the magistrate judge’s ruling. Id. at *7.
¶29      As pertinent here, the district court began its analysis by noting that to enforce a lien, the lien claimant must bring a “proper civil action.” Id. at *10 (quoting § 12-5-119). The court thus addressed first whether this statutory prerequisite was satisfied in the case before it, notwithstanding the fact that Johnson had not filed a motion in the present case or a separate civil action to enforce her lien. Id. The court concluded that the “proper civil action” requirement was satisfied, opining:
 
[T]he client’s motion to dismiss the lien claim put the enforcement of the lien claim at issue to the same effect as if the claimant had moved to reduce the lien to judgment in the civil action that gave rise to the lien claim, and therefore, constitutes a “proper civil action” under § 12-5-119.

Id. at *11.
¶30      For several reasons, we are persuaded by this analysis.
¶31     First, the Dietz court’s analysis is consistent with the express language of section 12-5-119. That statute does not say that the lien claimant must file a particular form of motion or action to enforce its lien. Nor does it preclude a client or third party from raising the lien’s enforceability by way of an objection or motion in the underlying civil action. Accordingly, whether the lien’s enforceability is raised by the claimant’s motion, a third party’s motion or objection, or a separate civil action, the court is being asked to address the lien’s enforceability in a proper civil action (i.e., an action in which all interested parties are given notice and an opportunity to be heard). In our view, to hold otherwise (e.g., by requiring a lien claimant to file its own motion or separate action, even when another party has already initiated a challenge to the claimant’s lien) would elevate form over substance and would serve no useful purpose.
¶32      Second, we perceive no basis for distinguishing Dietz based on which party objected to the lien. Whether it was the lien claimant’s client (as in Dietz) or successor counsel who is holding funds against which a lien is asserted (as here), the objection to the lien placed at issue the enforceability of that lien.
¶33      Third, allowing a successor attorney to challenge a prior attorney’s charging lien in the underlying action promotes judicial efficiency and economy by (1) allowing the affected parties to resolve the issue in the present case rather than in a separate action and (2) ensuring that the judge most knowledgeable about the issue (i.e., the judge who tried the case) can rule on the matter. See Gee, 560 P.2d at 836 (“To restrict the means of enforcement of an attorney’s lien [s]olely to independent civil actions would be a waste of judicial time, as well as contrary to the legislative intent reflected by the statutory language. The trial judge who heard the proceedings which gave rise to the lien is in a position to determine whether the amount asserted as a lien is proper and can determine the means for the enforcement of the lien.”).
¶34      Fourth, we note that Mintz has not argued that it was improper for Stevens to proceed by motion (Mintz argued lack of jurisdiction based on the arbitration clause and Stevens’ alleged lack of standing). Nor have we seen any applicable authority suggesting that such a motion was improper. To the contrary, in cases in which parties like Stevens have moved to strike lien notices, we have not questioned the propriety of such motions. See, e.g., Dudding v. Norton Frickey & Assocs., 11 P.3d 441, 444 (Colo. 2000).
¶35      For all of these reasons, we conclude that Stevens properly filed its motion to void Mintz’s lien in this case. As a result, we further conclude that the lien dispute was between Mintz and Stevens and not between Mintz and Ms. Martinez. Accordingly, the arbitration clause contained in the Mintz-Martinez Agreement was inapplicable, and the district court properly denied Mintz’s motion to compel arbitration and proceeded to address the merits of the issues presented.
C. Mintz’s Entitlement to Fees from Ms. Martinez
¶36      Having concluded that the district court had jurisdiction to hear the present dispute, we next address Mintz’s contention that Ms. Martinez was personally liable to it for the reasonable value of the services that it had provided. Like the district court, we reject this contention.
¶37      The Mintz-Martinez Agreement stated, in pertinent part, “In the event the Client terminates this contingent fee agreement without wrongful conduct by the Attorney which could cause the Attorney to forfeit any fee,” Mintz could ask the court to order Ms. Martinez to pay it a fee based on the reasonable value of the services that it had provided.
¶38      The district court found, with ample record support, that Mintz was not entitled to any such fee because (1) Ms. Martinez terminated Mintz’s representation for cause and (2) “[n]one of [Ms. Martinez’s ultimate] recovery was primarily based on the Mintz Law Firm’s efforts.” Specifically, the evidence showed, among other things, that (1) in December 2009, Ms. Martinez had hired Mintz to represent her, but no complaint was filed in her case until October 2010; (2) Mintz’s complaint named the wrong defendant and contained claims that were dismissed because they were invalid; (3) Mintz did not keep Ms. Martinez informed about her case, did not advise her regarding settlement offers or how the legal process worked, and generally failed to communicate with her;
Mintz did not advise Ms. Martinez regarding the initial $100,000 offer to settle the wrongful death action, and Ms. Martinez did not authorize Mintz to reject that offer or to make an $850,000 counteroffer, which a lawyer working for Stevens described as “ridiculous” and “completely out of the ballpark,” given applicable damages limits; and
Mintz’s billing records indicated that during the approximately ten months of its representation, it billed just under 4.5 hours for work performed, compared with the over 350 hours that Stevens had devoted to Ms. Martinez’s case during the course of its representation.
¶39      Accordingly, we conclude that the record amply supports the district court’s findings that Mintz was discharged for cause and that none of Ms. Martinez’s ultimate recovery was based primarily on Mintz’s efforts, and we will not disturb those findings on review. See In re Marriage of de Koning, ¶ 17, 364 P.3d at 496; Page, 592 P.2d at 796.

As a result, under the express terms of the Mintz-Martinez Agreement, Mintz was not entitled to fees, and therefore, Ms. Martinez was not personally liable to Mintz.
D. Other Issues
¶40      In light of our foregoing determinations, we need not address Stevens’ remaining
and alternative arguments, including its assertions that (1) we should adopt a “one-fee” rule for apportioning contingency fees among the attorneys who had contributed to the recovery and (2) the Mintz-Martinez Agreement was unenforceable for failing to comply with C.R.C.P. ch. 23.3.
III. Conclusion
¶41      For these reasons, we reverse the judgment of the court of appeals and remand this case for further proceedings consistent with this opinion.
JUSTICE COATS dissents, and JUSTICE EID joins in the dissent.
JUSTICE MÁRQUEZ and JUSTICE HOOD do not participate.
JUSTICE COATS, dissenting.
¶42      I take the time to write in dissent because I not only believe the majority is wrong but also that its ruling today substantially alters the nature and impairs the protections of the “attorney’s lien,” an encumbrance on the property of clients that has been available to attorneys for the collection of legal fees in this jurisdiction since before statehood. I also feel compelled to note the irony of having this momentous step taken precipitously, by a bare majority of a five-voting-member court, in a case in which the majority’s interpretation of the attorney’s lien statute was not advocated by either party or contemplated by the rulings of either the district court or court of appeals, and in which certiorari was granted on entirely different issues and supplemental briefing by the parties was neither sought by the court nor had. My disagreements with both the majority’s approach and its resolution of the case are so widespread as to give pause precisely where to begin.
¶43      Although the ruling that was initially appealed concerned the enforceability of two contingency fee agreements, entered into by the tort plaintiff with two different attorneys, from the start the subtext has always been the propriety of resolving the lien and fee claim of the first attorney in the underlying tort action, over his consistent and adamant resistance. As the majority indicates, the plaintiff’s second attorney settled her case, took a 40% contingency fee, and moved, in the wrongful death action itself, to void the lien of the first attorney, which had been filed more than a year earlier to secure his own fee claim. In denying the first attorney’s motion to strike and to permit him instead to arbitrate his fee dispute with his former client according to the terms of their fee agreement, the district court accepted the contention of the second attorney that in this jurisdiction a legal client can be liable for only one contingency fee, and from that premise, as well as the constructive notice to third parties filed with the court by the first attorney, as provided by statute, it reasoned that the fee dispute implicated by the second attorney’s motion to void the lien was solely a matter between the two attorneys over how to divide the single, 40% contingency fee, which the second attorney had already taken from the settlement. Further concluding that it therefore had jurisdiction over the first attorney’s lien and fee claim and that the second attorney had standing to challenge the enforceability of that lien, the district court—the court that presided over the second attorney’s settlement of the case—found as the trier of fact, once again as urged by the second attorney, that the first attorney, who had withdrawn from representation at the filing stage of the case, had actually been terminated for wrongful conduct and was entitled to absolutely none of the single contingency fee. Relying on our prior cases permitting recovery of a fee in quantum meruit, the court of appeals reversed, holding that the first attorney had such a claim against his former client and that the district court therefore erred both in treating the matter as a dispute solely between the two attorneys and in ruling on the merits of the first attorney’s fee claim.
¶44      The majority deftly avoids addressing the shortcomings of the district court’s jurisdictional rationale, as well as the validity of the single contingency fee premise upon which it relied, by ruling that the enforceability of an attorney’s lien may be litigated in the action in which the attorney performed the services for which he claims a fee, by any third party who holds funds encumbered by the lien. I think it clear, quite apart from the propriety of following this tangent of its own, that the majority errs by mischaracterizing the relevant language of the attorney’s lien statute; by abdicating its responsibility to interpret Colorado statutes and case law to a federal trial court, the rulings of which lack precedential value even in its own jurisdiction, and by misinterpreting the very federal court ruling upon which it relies; by characterizing this new interpretation of the attorney’s lien statute as serving the purposes of judicial efficiency and economy rather than depriving the lien holder of the process to which he is entitled in enforcing his lien; and finally by finding that the first attorney’s failure to specifically assert the lien statute as a bar, notwithstanding his consistent resistance to the jurisdiction of the wrongful death court, somehow amounted to acquiescence in, or waiver of any objection to, the majority’s construction of the statute. To fully appreciate the significance and novelty of the majority’s holding, some understanding of the history and development of the statutory source of the lien is essential.
¶45      By statute in this jurisdiction, attorneys have long been provided with what we have referred to as charging and retaining liens, to assist in securing payment of their reasonable attorney fees, see § 12-5-119, 120, C.R.S. (2015), but no right to an attorney’s lien beyond these statutory rights exists in the jurisdiction, People v. Brown, 840 P.2d 1085, 1087 (Colo. 1992). With regard to the former category, the statute grants attorneys a lien on any money, property, choses in action, or claims and demands in their hands, on any judgment they may have obtained or assisted in obtaining, and on any claims and demands in suit for any fees due or to become due from any client. § 12-5-119.
¶46      With regard to judgments in particular, the charging lien statute automatically gives the attorney a lien, or encumbrance, on the judgment, to the extent of his reasonable fees remaining due and unpaid. People ex rel. MacFarlane v. Harthun, 581 P.2d 716, 718 (Colo. 1978). The lien attaches immediately upon obtaining the judgment, and once the judgment is secured, as between attorney and client, nothing more need be done to cause the lien to be enforceable. Id.; see also Collins v. Thuringer, 21 P.2d 709, 709 (Colo. 1933). Before the lien can be enforced against third parties, however, notice must be given. Harthun, 581 P.2d at 718. Although not initially the case, see Fillmore v. Wells, 15 P. 343, 346 (Colo. 1887) (“It is unfortunate that the statute neither specifies a time for the enforcement of the lien, nor a method of giving notice of the purpose to do so.”), the statute itself has long provided attorneys with a method for putting third parties on constructive notice.
¶47      In the case of “demands in suit” and judgments obtained in whole or in part by any attorney, that attorney is permitted to file a notice of his claim as lienor with the clerk of the court in which the cause is pending, and that notice, when duly entered of record, constitutes notice “to all persons and to all parties, including the judgment creditor, to all persons in the case against whom a demand exists, and to all persons claiming by, through, or under any person having a demand in suit or having obtained a judgment.” § 12-5-119; see also In re Estate of Benney, 790 P.2d 319, 322–23 (Colo. 1990) (filing “notice of lien” with clerk of court wherein the action is pending constitutes notice to all third parties that attorney has an interest in the funds subject to the lien and renders the lien enforceable against third parties who may come into receipt of funds subject to the lien); Collins, 21 P.2d at 710 (“The provision [of the statute] concerning notice is intended to give constructive notice, so as to preserve the attorney’s lien in the event that the judgment debtor should settle the judgment without having actual notice of the lien claim, or some third person, without having such actual notice, should acquire an interest in the judgment or in its proceeds.”). As we have strongly implied, see Gee v. Crabtree, 560 P.2d 835, 836 (Colo. 1977) (distinguishing asserting from enforcing the lien), and as the court of appeals has persuasively reasoned, see In re Marriage of Mitchell, 55 P.3d 183, 186 (Colo. App. 2002) (finding that action to enforce attorney’s lien was not initiated within applicable statute of limitations by merely filing notice of the lien), the statute cannot be reasonably interpreted to intend that filing notice of the attorney’s claim as lienor with the clerk of the court in which the cause is pending serves to initiate enforcement of the lien, see Seitz v. Seitz, 516 P.2d 654, 655– 56 (Colo. App. 1973) (setting aside order of underlying district court limiting enforceability of lien of first attorney on motion of second attorney where first attorney merely filed notice of lien in original action but took no action to enforce it).
¶48      With regard to the actual enforcement of a charging lien, however, the statute provides little direction. Unlike other statutes creating liens, which typically specify such things as a time period within which the lienholder must commence foreclosure or enforcement, the parties necessary for such proceedings, and any required allegations of the complaint, see, e.g., §§ 38-20-107 to -108, C.R.S. (2015) (liens on various personal property); §§ 38-22-110 to -115, C.R.S. (2015) (mechanics’ liens), the attorney’s charging lien statute indicates merely that “[s]uch lien may be enforced by the proper civil action,” § 12-5-119. In the context of an attorney seeking to obtain an order and judgment for his fees in a dissolution of marriage proceeding, we previously held that the statutory term “proper civil action” included the civil action that gave rise to the attorney’s lien claim. Gee, 560 P.2d at 836. Finding that to restrict the means of enforcement of an attorney’s lien solely to independent civil actions would be a waste of judicial time and contrary to the legislative intent reflected by the statutory language, we held in that case that the attorney’s charging lien could not only be asserted but could also be enforced in the civil action that gave rise to the lien claim. In Gee, we emphasized, however, that the attorney was in no way limited to enforcing his lien in the action giving rise to his fee claim, but could choose, instead, to enforce it in an independent action if he wished. Id. 
 
¶49      Contrary to the characterization of the majority, the express language of the statute provides that “such lien may be enforced by the proper civil action”—not that the validity or enforceability of the lien may be challenged in a proper civil action. From the title, structure, history, and clear purpose of the statute, there can be absolutely no doubt that the statutory lien belongs to and is solely for the benefit of the attorney attempting to secure payment of fees due or to become due him from his client. See § 12-5-119. The attorney’s lien statute itself is unconcerned with, and simply fails to provide a vehicle for others to challenge, the validity of an attorney’s lien, and we have never suggested otherwise. See id. In Gee, which the majority twists to its own ends, we clearly found there to be no good reason to force an attorney to proceed by independent action should he find it equally satisfactory to enforce his lien in the underlying action itself. 560 P.2d at 836. Nothing in Gee even remotely suggests, however, that the statute provides a vehicle for others to challenge the validity of an attorney’s lien, and especially not others who are not even party to the underlying civil action, merely because they have come into possession of potentially encumbered property. See id. 
 
¶50      Even the federal district court’s ruling in Dietz v. University of Denver, upon which the majority so heavily relies, provides no support for its expansive holding today. Nos. 95-cv-02756-WDM-OES, 97-cv-00897-WDM-OES, 2011 WL 723118 (D. Colo. Feb. 22, 2011). In Dietz the propriety of litigating the enforcement of the attorney’s lien in the underlying action was not contested by the attorney herself, but rather by the client’s successor attorney, after the lien claim had already been heard, on the somewhat disingenuous ground that because the lien contest had been initiated by the client’s motion, the action in the underlying court was not a proper one, and any subsequent attempt by the first attorney to enforce would by then be time-barred. Id. at *10. The court’s ruling in Dietz stands, at most, for the unremarkable proposition that the enforcement of a lien claim is properly put at issue by the attorney’s willing defense of a motion by his client in the underlying action to dismiss the lien, just as it would be by a motion to enforce actually filed by the attorney claiming the fee. Id. at *11. No more than the federal court in Dietz have we ever suggested any particular formalities according to which an attorney must select the court in which the underlying cause is pending to enforce his lien. It is nevertheless clear that enforcement of the lien in the underlying action cannot be proper without at least the agreement or acquiescence of the attorney to whom the lien is statutorily granted.
¶51      The mere fact that the attorney’s lien statute itself does not provide a method for challenging the validity of such a lien does not, of course, leave the holders of potentially encumbered property without recourse or forever subject to an action to enforce the lien. As the court of appeals has held, see Mitchell, 55 P.3d at 186, precisely because the statute cannot be reasonably interpreted to intend that filing notice of the attorney’s claim alone serves to initiate enforcement of the lien, the attorney must take some affirmative action to enforce the lien within the period allowed by the applicable statute of limitations. In addition, the legislature has separately provided for an expedited process for having spurious liens declared invalid and removed. See §§ 3835-201 to –204, C.R.S. (2015). Finally, nothing in the attorney’s lien statute purports to limit a holder of encumbered property from seeking, in an appropriate forum and according to the appropriate civil process, a declaration of the amount of any fees remaining due and owing to a claiming attorney.
¶52      Quite apart from the fact that I consider the majority’s interpretation of the statute untenable, I find its reliance on “judicial efficiency and economy” as support for that interpretation to be entirely unjustified. In Gee we relied on similar considerations in reference to a fee determination by the court overseeing the litigation in which the fee was earned. See 560 P.2d at 836. Rather than the enforcement of his lien by an attorney representing a party to the action, the majority’s expansive interpretation contemplates that any of a number of other persons, who are themselves neither parties nor attorneys representing parties, be authorized to hail into the underlying action an attorney, who is himself neither a party nor any longer representing a party to the action. The rationale of Gee for permitting the enforcement of an attorney’s lien by the court with first-hand knowledge of the representation in question and control over the parties and any pending settlement, is a far cry from what the majority proposes today; and I, for one, do not consider short-circuiting the process that would be due other civil litigants, like discovery, laudable as promoting judicial efficiency and economy.
¶53      Finally, I fail to understand how, notwithstanding his emphatic objections at every possible turn to the jurisdiction of the wrongful death court, the failure of the first attorney to specifically assert the provisions of the attorney’s lien statute as a bar to proceeding in the underlying action helps the majority to be persuaded by the federal district court’s analysis. Maj. op. ¶ 30 (“For several reasons, we are persuaded by this analysis.”). Until the majority’s reliance on it today, the “proper civil action” language of the attorney’s lien statute has never been offered as a justification for hearing the motion to void the lien over the lien-claimant’s resistance, and therefore, until today, there has never been any cause to contest this interpretation of the statute. More to the point, however, any suggestion of waiver or failure to preserve would seem to militate against a need to invoke or interpret the statute at all, rather than militate in favor of the majority’s expansive interpretation of it.
¶54      Perhaps the only thing about which the majority and I agree is the lack of any need to opine concerning the single contingency fee question on which certiorari was actually granted. See maj. op. ¶ 40. Because I believe there was absolutely no basis for litigating the second attorney’s motion to void as part of the underlying action, I would affirm the judgment of the court of appeals, vacate the findings and conclusions of the district court, and leave to the rulemaking process resolution of the host of ethical and procedural issues surrounding the permissibility and enforceability of separate contingency fee agreements with successive attorneys in the same litigation.
¶55     I therefore respectfully dissent.

I am authorized to state that JUSTICE EID joins this dissent.

[1] We granted certiorari to review the following issues:
1. Whether a client is personally liable to a discharged attorney for the reasonable value of services rendered under a contingency fee agreement when a successor attorney received the full contingency fee.
2. Whether the court of appeals erred by reversing the trial court’s denial of respondent’s motion to compel arbitration and its award of attorney’s fees and costs to petitioner.
3. Whether the court of appeals erred by failing to address the appellees’ arguments that the arbitration clause was inapplicable because the contingent fee agreement was unenforceable and void for failure to comply with C.R.C.P. ch. 23.3.