2016 CO 2

**IN RE the MARRIAGE OF Kendrik Jon DE KONING, Petitioner,**

and

**Melissa Christie de Koning, Respondent.**

Supreme Court Case No. 14SC152

Supreme Court of Colorado.

January 11, 2016

Attorney for Petitioner: Robert E. Lanham, P.C., Robert E. Lanham, Boulder, Colorado.

Attorney for Respondent: Senn Visciano Canges P.C., James S. Bailey, Denver, Colorado.

JUSTICE HOOD delivered the Opinion of the Court.

¶1 After a two-day permanent orders hearing in this divorce action, at which the parties presented extensive evidence regarding their finances, the trial court felt it lacked sufficient information to allocate attorney's fees under section 14–10–119, C.R.S. (2015), the provision governing such awards under the Uniform Dissolution of Marriage Act (UDMA). Therefore, the court chose to issue the decree dissolving the marriage—along with permanent orders addressing parental responsibilities, child support, division of marital property, and spousal maintenance—but postponed its determination on attorney's fees. Approximately six months

after the original hearing, the court conducted a hearing on fees.

¶2 During the gap between the original hearing and the fees hearing, Wife's counsel requested additional documents regarding Husband's fluid financial circumstances. Husband objected and requested a protective order, which the trial court issued, thereby confining its consideration of the parties' financial circumstances to the evidence that existed at the time of the original hearing. The court ultimately ordered each party to pay his or her own fees and costs.

¶3 Wife appealed from this order, and a division of the court of appeals reversed. It reasoned that because the permanent orders proceedings were not complete until entry of the fee award, evidence of the parties' finances should not have been "frozen" as of the date of the decree of dissolution, but instead assessed as of the date of the fees hearing. Thus, the court of appeals concluded the trial court should have permitted additional discovery in order to ensure an equitable determination of attorney's fees.

¶4 We disagree with the court of appeals' conclusion, and instead hold that for the purpose of deciding whether to award attorney's fees under section 14–10–119, a trial court should consider the parties' financial resources as of the date of the issuance of the decree of dissolution or the date of the hearing on disposition of property, if such hearing precedes the date of the decree. Accordingly, we reverse and remand to the court of appeals to reinstate the trial court's protective order and its order instructing the parties to pay their own attorney's fees.

## I. Facts and Procedural History

¶5 In 2011, after eleven years of marriage and the birth of their three children, Petitioner Kendrik de Koning (Husband) and Respondent Melissa de Koning (Wife) squared off in an acrimonious dissolution proceeding. By the time the dust settled in 2012, the parties had expended $180,000 in attorney's fees and costs—nearly forty percent of the value of their marital estate at the time the decree of dissolution entered. Ultimately, Wife incurred a total of more than $90,000 in attorney's fees and just shy of

$9,500 in costs. Husband incurred the balance.

¶6 After a temporary orders hearing in September 2011, the trial court ordered Husband to pay $20,000 to Wife's attorney to assist her with attorney's fees. The court also ordered Husband to pay Wife $8,500 per month in temporary unallocated family support, "unallocated" meaning the monthly sum was to encompass both spousal maintenance and child support.

¶7 The court then scheduled a two-day permanent orders hearing for March 2012. In the joint trial management certificate filed in advance of the hearing, both parties requested that the court address attorney's fees. Wife asserted she had borrowed $42,500 for fees and costs and expected to owe approximately $28,000 by the end of the trial and issuance of permanent orders; she also asserted she had no ability to pay those debts. Husband requested each party pay his or her own attorney's fees and costs.

¶8 At the outset of the March hearing, the court divided the allotted time evenly between the parties and instructed them to monitor their own time. Neither party objected. Though both parties had requested that the court address attorney's fees, each devoted little time to the issue at the hearing.

¶9 In April 2012, the trial court issued a decree dissolving the marriage and entered permanent orders. The court methodically allocated parental responsibilities, divided the marital estate, and directed Husband to pay Wife child support and maintenance. But the court did not resolve the issue of attorney's fees, noting that neither party had adequately addressed the issue at the March hearing. The court then set a second hearing six months after the first to allow the parties to present more complete evidence regarding the fees they had incurred, whether those fees were reasonable and necessary, and how they should be equitably divided.

¶10 Three months after the entry of the decree, Wife served Husband with a request for production of documents, demanding updated financial information. Specifically, she asked for documents related to his personal and business bank accounts and credit cards,

his businesses' financial reports, and copies of executed leases.

¶ 11 Husband moved for a protective order to block the request. He insisted that the parties' financial resources at the time of the permanent orders hearing in March, not at the time of the impending hearing in September, governed the fee determination. The trial court agreed with Husband and issued the protective order, reasoning the attorney's fees award was "part and parcel" of the final orders it had already issued. Therefore, the court rejected Wife's request for additional discovery, considering it irrelevant.

¶ 12 At the September fees hearing, Wife asked the court for a continuance and again urged the court to consider changes in the parties' financial resources since the March permanent orders hearing. She claimed Husband's mutual fund business had attracted a much larger investment pool in the intervening months and that his rapidly improving· circumstances enabled him to pay her fees. The court again denied Wife's request to obtain updated financial information. ·

¶ 13 In its order allocating attorney's fees, the trial court reiterated its obligation to consider the parties' financial situation as of the time of the March hearing. It determined that Husband's share of the marital estate was much less liquid than Wife's and, although his income was significantly higher than Wife's, so too were his financial obligations resulting from the court's other orders. Consequently, the court ordered each party to pay his or her own fees and costs.

¶ 14 Wife appealed the protective order and the order denying her attorney's fees. She argued section 14–10–119 requires a court to consider the parties' "current" financial resources, and thus the trial court erred in prohibiting her from presenting evidence of changed financial circumstances at the time of the September hearing. Husband responded that because courts consider the

marital property division and maintenance and attorney's fees awards in tandem, a continued hearing to address fees and costs should be predicated on the parties' financial resources as they existed on the date of the permanent orders hearing.

¶ 15 The court of appeals rejected the parties' assumption that two distinct hearings— a complete permanent orders hearing and a separate attorney's fees hearing—had occurred. *In re Marriage of de Koning*, 2014 COA 4, ¶ 11, —— P.3d ——. Instead, the court decided the latter hearing was merely an extension of the former. It held that until the trial court entered an order on attorney's fees, the permanent orders were incomplete, and updated evidence of the parties' finances "was not only relevant but was necessary for the court to determine whether wife was entitled to fees under section 14–10–119." *Id.* at ¶ 12. The court of appeals vacated the protective order, *id.* at ¶ 29, and reversed and remanded to the trial court to reconsider Wife's request for attorney's fees based· on the parties' financial resources at the time of the hearing on remand, *id.* at ¶ 25.

¶ 16 We granted Husband's petition for certiorari.[1]

## II.  Standard of Review

■ ¶ 17 We review a trial court's findings of fact for clear error or abuse of discretion, but we review the legal conclusions the trial court drew from those findings de novo. *E–470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d 18, 22 (Colo.2000); *accord In re Marriage of Gallegos & Baca–Gallegos*, 251 P.3d 1086, 1087 (Colo.App.2010) ("We review the district court's decision to award attorney fees and costs for an abuse of discretion, but we review the legal conclusions forming the basis for that decision de novo.").

## III.  Analysis

■ ¶ 18 The UDMA, §§ 14–10–101 to –133, C.R.S. (2015), contains separate sections

1.  We granted certiorari to review the following issue:

Whether the court of appeals erred when it reversed the trial court and held that when a dissolution-of-marriage permanent orders hearing is held, and the issue of an award of

attorney's fees pursuant to section 14–10–119, C.R.S. (2013), is not heard until a later date, the court must consider the parties' financial circumstances as they exist at the date of the later attorney's fees hearing, and not the date of the permanent orders hearing.

governing the major financial components of a dissolution proceeding. Section 14–10–113 governs the disposition of marital property. Section 14–10–114 governs the award of spousal maintenance. Section 14–10–115 governs the payment of child support. And section 14–10–119 governs the award of attorney's fees.[2]

¶ 19 The UDMA requires the trial court "to make separate property, maintenance, and attorney fees orders based on separate considerations." *In re Marriage of Huff*, 834 P.2d 244, 248 (Colo.1992). Nonetheless, we have long recognized the statutory interrelationship of these separate computations. *See In re Marriage of Jones*, 627 P.2d 248, 251 (Colo.1981) ("[W]here an appeal has been taken from the property division, maintenance and attorney's fee provisions of a dissolution of marriage decree as a whole, we have held that they must be considered together to determine whether the trial court abused its discretion."). As the court of appeals has often said, the issues of property distribution, maintenance, and attorney's fees are "inextricably intertwined." *In re Marriage of Hill*, 166 P.3d 269, 272 (Colo.App. 2007) (quoting *In re Marriage of Antuna*, 8 P.3d 589, 595 (Colo.App.2000)).

■ ¶ 20 The fact that they are intertwined, however, does not resolve the issue before us. Therefore, we take this opportunity to clarify how these sections intertwine and what that means for a trial court's consideration of parties' financial circumstances when it conducts an attorney's fees hearing after the entry of the decree.

¶ 21 The UDMA and our case law contemplate a specific sequence in which the division of property, maintenance, and attorney's fees computations should occur. First, the court must divide the marital property. *Huff*, 834 P.2d at 248. It does so based on a number of factors, including the "economic circumstances" of the parties "at the time the division of property is to become effective." § 14–10–113(1)(c). Critically, "property shall be valued as of the date of the decree or as of the date of the hearing on disposition of property if such hearing precedes the date of the decree." § 14–10–113(5). This property division is final and generally non-modifiable. § 14–10–122(1)(a).

¶ 22 Second, the court must determine whether maintenance is necessary to provide for the reasonable needs of the party seeking spousal support. *Huff*, 834 P.2d at 248. Such a maintenance order "entered at the time of permanent orders" shall be established after considering the financial resources of the party seeking maintenance, including marital property apportioned to him or her. § 14–10–114(4), C.R.S. (2013).[3] After calculating the maintenance award, the court may determine child support obligations. *See* § 14–10–115(5)(a)(I)(Y) (listing "[a]limony or maintenance received" as a source of income to be considered for purposes of the child support guidelines).

¶ 23 Finally, the court may, in its discretion, order one party to pay the other's reasonable attorney's fees after considering both parties' "financial resources." § 14–10–119; *Huff*, 834 P.2d at 248. Courts must consider a request for fees "in light of [section 119's] equitable purpose." *In re Marriage of Aldrich*, 945 P.2d 1370, 1378 (Colo.1997). The purpose of any fee award under section 119 is to ensure neither party suffers "undue economic hardship" as a result of the dissolution. *Id.* at 1377; *In re Marriage of Ikeler*, 161 P.3d 663, 669 (Colo.2007).

2. Because marriage dissolution proceedings are civil cases, it is permissible to award attorney's fees under section 14–10–119, under section 13–17–102, C.R.S. (2015), which generally governs the award of attorney's fees in civil cases, or under both provisions. *In re Marriage of Aldrich*, 945 P.2d 1370, 1377 (Colo.1997). Only section 14–10–119 is at issue in this case.

3. Effective January 1, 2014, the maintenance statute includes non-presumptive guidelines for amount and duration of support. § 14–10–114, C.R.S. (2015). Subsection (3)(a)(I)(B) requires that a court's maintenance determination include a finding regarding the marital property apportioned to each party. Subsection (3)(d) states that the trial court shall award maintenance only "if it finds that the spouse seeking maintenance lacks sufficient property, including marital property apportioned to him or her, to provide for his or her reasonable needs." Thus, the changes to the maintenance statute do not alter the sequence we describe here.

¶ 24 The statute allows the court to award attorney's fees "from time to time," § 14–10–119, but nowhere does it define that phrase. Notably, the statute does not feature the word "current." This undercuts Wife's assertion that the UDMA establishes a test based on the parties' "current" financial circumstances (by which Wife means the circumstances that exist at the time of any hearing on attorney's fees). Wife presents a string of court of appeals decisions that she alleges support this proposition. But none of those cases implicated the question presented here or had need to consider the date to which "current" refers. Thus, despite using the word "current," those cases offer little help to Wife's argument or to our resolution of this case. Instead, this case presents for us an issue of first impression.

¶ 25 Though the statute lacks guidance on the meaning of "from time to time," Colorado Rule of Civil Procedure 16.2, which governs court-facilitated management of domestic relations cases, offers some insight into the propriety of reopening discovery to obtain updated financial information, as requested by Wife here. Paragraph (f) provides that after an initial status conference, or as agreed to in a stipulated case management plan, each party may serve interrogatories and requests for production on the other. C.R.C.P. 16.2(f)(3). It also requires that all discovery "be initiated so as to be completed not later than 28 days before [the] hearing." C.R.C.P. 16.2(f)(5). The rule's statement of purpose and scope advises that it is intended to "provide a uniform procedure for resolution of all issues in domestic relations cases that reduces the negative impact of adversarial litigation wherever possible." C.R.C.P. 16.2(a). While the trial court retains discretion to grant discovery and tailor it to the particular needs of the case, *id.; see also* C.R.C.P. 16.2(f)(4), Rule 16.2 indicates a preference for limiting discovery in time and in scope in order to further the efficient resolution of domestic relations cases.

¶ 26 As demonstrated by the framework outlined above, awards of spousal maintenance and attorney's fees flow from the property distribution, which is typically the linchpin of financial permanent orders.

When a trial court is required to revisit a property division, it must also reevaluate maintenance and attorney's fees awards in light of the updated property division, because the issues are interdependent. *In re Marriage of Balanson*, 25 P.3d 28, 43 (Colo. 2001); *see also Jones*, 627 P.2d at 251–52; *Hill*, 166 P.3d at 272; *Antuna*, 8 P.3d at 595. But we have never indicated that the need for reevaluation works in both directions—to the contrary, we have suggested that when a trial court reconsiders an attorney's fees award on remand, it need not reexamine the parties' financial resources. *See Jones*, 627 P.2d at 252 ("[W]hen neither party contests a trial court's division of property it is not necessary that the court be able to reconsider the property division in order to correct error in the provisions for maintenance and attorney's fees."); *accord In re Marriage of Rieger*, 827 P.2d 625, 626 (Colo.App.1992) ("The permanent orders do reflect a thorough review of the parties' financial resources, and ... the trial court need not reopen that issue on remand.").

¶ 27 And, as we have previously stated, "an award of attorney fees must be reviewed in light of the parties' financial resources after the property division and any maintenance award." *Huff*, 834 P.2d at 248; *see also In re Marriage of Wells*, 850 P.2d 694, 696 (Colo.1993) ("We hold that section 14–10–113(1)(c) requires a trial court to consider the economic circumstances of the respective spouses *at the time any hearing relating to the division of marital property is held....*" (emphasis added)); *In re Marriage of Renier*, 854 P.2d 1382, 1386 (Colo.App.1993) (detailing parties' financial circumstances as they existed "at the time of permanent orders," and remanding for trial court to reconsider attorney's fees award in light of those earlier circumstances).

¶ 28 The centrality of property division to determining awards of maintenance and attorney's fees leads us to conclude that parties' financial circumstances must be assessed as of the date of the decree or the date of the hearing on disposition of property if such hearing precedes the date of the decree (here, the March hearing)—even if the attorney's fees hearing is postponed.

This conclusion recognizes the fact that the attorney's fees and maintenance awards rely on the property distribution and must be revisited if it is discarded.

¶ 29 This conclusion also reflects a simple truth of divorce proceedings: once the decree is entered, the marriage is dissolved. Consideration of the parties' financial resources as of the date the marriage ended is logical. After that decree is issued, the parties are no longer married, and there is no longer a reason to consider their "economic lives" as "closely intertwined," *see* § 14–10–114(1); it is therefore appropriate for an assessment of the parties' financial circumstances as of that date to inform not only the property division, but also any attorney's fees award, even if an attorney's fees hearing occurs after the property disposition hearing and entry of the dissolution decree.

¶ 30 Furthermore, practical considerations militate against adopting the court of appeals' approach. Prolonging divorce litigation is particularly undesirable because it increases the emotional toll on parties and their children. *See* § 14–10–102(2)(b) (stating that an underlying purpose of the UDMA is "[t]o mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage"). Permitting additional discovery and renewed evaluation of the parties' financial circumstances, as Wife requested here, would impose added emotional costs on the parties by allowing settled issues to be re-litigated.[4]

¶ 31 Of course, as a matter of practice, these situations should be relatively rare—courts should endeavor to hear all issues incident to a marital dissolution at a single permanent orders hearing and enter complete orders that resolve all issues before the court. The Colorado Rules of Civil Procedure also endorse this approach. C.R.C.P. 121 § 1–22, cmt. 2 ("Unless otherwise ordered by the court, attorney fees under C.R.S. 14–10–119 should be heard at the time of the hearing on the motion or proceeding for which they are requested."). This will bring about finality and avoid the precise type of complication that arose here.

¶ 32 Nonetheless, the trial court correctly limited its consideration of the parties' financial resources to those that existed at the hearing in March.

## IV. Conclusion

¶ 33 We hold that for the purpose of deciding whether to award attorney's fees under section 14–10–119, a trial court should consider the parties' financial resources as of the date of the issuance of the decree of dissolution or the date of the hearing on disposition of property, if such hearing precedes the date of the decree. Accordingly, we reverse and remand to the court of appeals to reinstate the trial court's protective order and its order instructing the parties to pay their own attorney's fees.

---

4. Our holding applies in the limited context of deciding whether to award attorney's fees when entering permanent orders. We do not consider an attorney's fees request in the context of a post-decree motion to modify.