23CA1562 Marriage of McCale 08-22-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1562 El Paso County District Court No. 22DR30262 Honorable David Prince, Judge In re the Marriage of Allyson Ann McCale, Appellant, and Donald Richard McCale, III, Appellee. JUDGMENT AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED WITH DIRECTIONS Division VII Opinion by JUDGE TOW Gomez and Kuhn, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 22, 2024 The Drexler Law Group, LLC, Matthew B. Drexler, Teresa A. Drexler, Colorado Springs, Colorado; Drexler Law, LLC, Regina T. Drexler, Denver, Colorado, for Appellant Harrison Family Law, PC, Bridgette D. Harrison, Colorado Springs, Colorado, for Appellee 
1 ¶ 1 In this dissolution of marriage proceeding involving Allyson Ann McCale (mother) and Donald Richard McCale, III (father), mother appeals the maintenance, child support, property division, and life insurance portions of the district court’s permanent orders. She also seeks disqualification of the district court judge. We affirm the judgment in part and reverse it in part, and we remand the case for further proceedings consistent with this opinion. I. Background ¶ 2 After a hearing, the district court dissolved the parties’ marriage of nearly three decades and entered permanent orders. After imputing potential income to mother, the district court awarded mother maintenance of $5,000 per month for twelve months, followed by $4,000 per month for twenty-four months, and then $3,000 per month until father retires or mother remarries. The court also required father to pay a monthly child support obligation of $1,053 because mother was the primary caretaker for the parties’ son, who has disabilities and will need care for life. The district court declined mother’s request, however, to require father to pay the child support payments into a special needs trust. 
2 Finally, the court’s permanent orders noted that “the parties agreed on an obligation of [father] to maintain life insurance” but did not specify how much life insurance father was required to hold. ¶ 3 Mother then filed a motion for post-trial relief under C.R.C.P 59, asking the district court to specify that father must maintain $850,000 in life insurance with mother as the beneficiary. The court denied the motion, reasoning that the parties “did not present a dispute relating to the [life] insurance policy at [the permanent orders hearing] for resolution” and that mother did not cite any evidence from the record which would justify her request. II. Timeliness of Appeal ¶ 4 As a preliminary matter, we reject father’s argument that mother’s appeal is untimely because she filed her notice of appeal more than forty-nine days after the district court’s permanent orders. See C.A.R. 4(a)(1) (requiring notice of appeal to be filed within forty-nine days after entry of judgment). Under C.A.R. 4(a)(3), once a party files a timely Rule 59 motion, the deadline for filing a notice of appeal is terminated, and the deadline resets once the district court disposes of the Rule 59 motion. Mother filed her 
3 notice of appeal on September 7, 2023, which was less than forty-
nine days after the district court denied her timely filed Rule 59 motion on August 1, 2023. Her appeal, therefore, is timely. III. Shirking Requirement ¶ 5 Mother argues that the district court’s marital property division, maintenance award, and child support award were improper because they improperly relied on an imputation of her potential income. Specifically, mother contends the district court was required to find that she was shirking a financial obligation under People v. Martinez, 70 P.3d 474 (Colo. 2003), before it could impute her potential income. We agree that the district court improperly imputed potential income to mother. But we note that this implicates only the maintenance and child support awards and not the division of marital property. A. Preservation and Standard of Review ¶ 6 We reject father’s argument that mother did not preserve her arguments for appeal because she did not raise them in her Rule 59 motion. To preserve an issue for appeal all that is required is that “the issue be brought to the attention of the trial court and that the court be given an opportunity to rule on it.” Berra v. Springer & 
4 Steinberg, P.C., 251 P.3d 567, 570 (Colo. App. 2010). Mother raised these issues in the joint trial management certificate (JTMC), and they are therefore preserved. ¶ 7 There is no requirement that mother needed to raise the issues again in her Rule 59 motion to preserve them for appeal. Father cites Furer v. Allied Steel Co., 483 P.2d 212, 213 (Colo. 1971), for the proposition that “[u]nless an allegation of error is brought before the trial court in a new trial motion, [an appellate court] will not consider that allegation on writ of error.” However, Furor is over fifty years old and addresses language that has since been amended. Rule 59(b) now clearly states that a motion for post-trial relief “shall not be a condition precedent to appeal or cross-appeal, nor shall filing of such motion limit the issues that may be raised on appeal.” Mother was not required to raise the issues again in her Rule 59 motion to preserve them. Accordingly, we reach the merits of mother’s appeal. ¶ 8 We review the district court’s orders on maintenance, child support, and division of marital property for an abuse of discretion, and we will not disturb the court’s decision unless it is shown to be 
5 manifestly arbitrary, unfair, or unreasonable or based on a misapplication of the law. In re Marriage of Collins, 2023 COA 116M, ¶¶ 19, 37 (reviewing property division and child support orders for abuse of discretion); In re Marriage of Medeiros, 2023 COA 42M, ¶¶ 28, 58 (reviewing maintenance order for abuse of discretion). B. Analysis ¶ 9 When considering a maintenance or child support request, the court must make findings of, among other things, the parties’ incomes and financial resources. § 14-10-114(3)(a)(I), C.R.S. 2024 (outlining maintenance factors); § 14-10-115(2)(b)(II), (V), C.R.S. 2024 (outlining child support factors). If a party is voluntarily underemployed, then maintenance and child support shall be calculated based on a determination of potential income. § 14-10-114(8)(c)(IV); § 14-10-115(5)(b)(I).
1 ¶ 10 However, before a court can impute a party’s potential income, it must determine that the party is voluntarily underemployed, 1 This requirement is subject to exceptions, none of which are applicable here. See § 14-10-114(8)(c)(IV)-(V), C.R.S. 2024. 
6 meaning the party is shirking a financial obligation “by unreasonably foregoing higher paying employment that [they] could obtain.” Martinez, 70 P.3d at 476. Either parent might forgo higher paying employment to manipulate a court-ordered support payment and, thus, be considered voluntarily underemployed, regardless of whether the parent is the obligor or obligee of the court order. See In re Marriage of Connerton, 260 P.3d 62, 64, 66 (Colo. App. 2010) (imputing income to mother who was obligee of child support order). Moreover, although Martinez analyzed the imputation of potential income for determining child support under section 14-10-115, the same analysis applies when imputing income for determining spousal maintenance under section 14-10-114.
2 In re Marriage of Young, 2021 COA 96, ¶ 22 (“Though Martinez was a child support case, the analysis of voluntary underemployment is the same in a maintenance case.” (quoting In re Marriage of Wright, 2020 COA 11, ¶ 21 n.3)). 2 Father does not dispute that a shirking analysis is required before imputing potential income to the obligee of a maintenance order under section 14-10-114. 
7 ¶ 11 The district court failed to find that mother shirked a financial obligation and was voluntarily underemployed. In its permanent orders, the district court said, “Both parties agree that some degree of income should be imputed to [mother] above her actual earnings.” However, in the JTMC, mother expressly argued that “[i]t would be an abuse of discretion to find that mother was voluntarily underemployed.” Instead, mother asserted that the court should use her actual income based on a three-year average. ¶ 12 Further, the record is unclear on whether mother shirked any financial obligations. At the permanent orders hearing, mother testified that she was self-employed as a part-time certified public accountant. However, mother said she had an autoimmune attack in 2021, and ever since her hands have been impaired. Because of these health issues and having to care for the parties’ son, mother said she could not work full time. Father also agreed that mother could not work full time, but he suggested that she could currently work more hours than she had been working during the last years of their marriage. Most of the testimony at the permanent orders hearing went toward how many hours mother could work, but there 
8 was little to no development on whether mother was voluntarily working fewer hours in order to shirk a financial obligation — or, in other words, whether mother was voluntarily working fewer hours in order to receive a higher child support award. Thus, on remand, the district court must determine whether mother was shirking a financial obligation before it can impute any potential income to her. ¶ 13 Because the district court’s maintenance and child support awards were based on mother’s imputed potential income, which was improperly determined, we reverse those portions of the permanent orders. ¶ 14 However, we reject mother’s argument that the improper income imputation also renders the property division erroneous. First, we note that the parties stipulated to much of the marital property division in the JTMC. And, to the extent they did not, their disagreements were not centered around the parties’ economic circumstances. Second, marital property is divided before maintenance or child support are determined because determining those awards requires an understanding of the parties’ financial 
9 resources, which include the apportioned marital property. In re Marriage of de Koning, 2016 CO 2, ¶¶ 21-22. While reevaluating a property division may require reevaluating maintenance, the need for reevaluation does not necessarily work in both directions. Cf. id. at ¶ 26 (holding revaluation of attorney fees award did not require court to reexamine parties’ financial resources). Thus, although the imputation of potential income resulted in erroneous maintenance and child support awards, that does not require the court to redivide the marital property. ¶ 15 Additionally, mother challenges the district court’s refusal to order father to pay child support into a special needs trust. However, the parties’ briefs do not develop any arguments regarding the programs the child was eligible for, the special needs trust requirements for those programs under state and federal law, or how those might interact with section 14-10-117, C.R.S. 2024 (outlining payments of child support). Because we reverse the child support award and remand for further proceedings, we decline to consider that issue and, instead, allow the district court to consider it on remand. See Am. Fam. Mut. Ins. Co. v. Am. Nat’l Prop. & Cas. 
10 Co., 2015 COA 135, ¶ 42 (declining to consider undeveloped argument). IV. Life Insurance ¶ 16 Mother also argues that the district court erred by denying mother’s Rule 59 motion, which requested the district court to specify the amount of life insurance father is required to hold with mother as the beneficiary. However, we conclude this issue is unpreserved. ¶ 17 “Ordinarily, raising a new issue for the first time in a [Rule 59] motion is insufficient to preserve that issue for appeal.” In re Marriage of Lohman, 2015 COA 134, ¶ 22. In the JTMC, mother “request[ed] [father] maintain life insurance with [mother] as the beneficiary in order to secure any financial obligations to [mother] until such time as those obligations are fulfilled.” Mother did not request any specific amount of life insurance or say anything more on the matter, either in the JTMC or at the permanent orders hearing. And father, in the JTMC, expressly agreed to hold a life insurance policy for $250,000 for the next eight years. Accordingly, 
11 the district court noted that the parties agreed on father’s obligation to hold life insurance. ¶ 18 Mother’s Rule 59 motion then requested that father hold a life insurance policy of $850,000. However, as the district court noted, this amount was not raised in the JTMC or at the final orders hearing. Thus, the issue is unpreserved, and we do not consider it. V. Judicial Bias ¶ 19 Next, mother contends that the district court judge who presided over the permanent orders hearing was biased and should be disqualified. Her argument focuses on the judge’s comments about her request to have father pay child support into a special needs trust. The judge called mother’s request a “scheme” to “manipulate income” and “launder[ing].” However, we do not believe these comments rise to the level of bias. ¶ 20 In addressing this issue, we do not consider whether the district court erred by denying mother’s motion for recusal, which was filed after her notice of appeal. Instead, we consider whether mother’s judicial bias arguments disqualify the particular judge from presiding over the matter on remand and whether the district 
12 court’s orders require vacatur. See Black v. Black, 2020 COA 64M, ¶ 131 (declining to disqualify judge on remand). ¶ 21 For a bias claim to be viable, “a judge must show ‘deep-seated favoritism or antagonism that would make fair judgment impossible.’” People in Interest of A.P., 2022 CO 24, ¶ 31 (quoting Liteky v. United States, 510 U.S. 540, 555 (1994)). However, “judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.” Id. (alteration omitted) (quoting Liteky, 510 U.S. at 555). And “‘[e]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect [people], even after having been confirmed as . . . judges, sometimes display’ don’t establish bias or partiality.” Id. (alterations in original) (quoting Liteky, 510 U.S. at 555-56). ¶ 22 The judge’s comments were expressions of dissatisfaction that do not rise to the level of bias. While his comments may have been misguided, given that Colorado law permits special needs trusts under certain circumstances — see, e.g., § 15-14-412.8, C.R.S. 
13 2024 — they do not suggest that he had an antagonistic opinion of mother. Rather, his comments exhibited dismay at what he believed to be an impermissible manipulation of income. See A.P., ¶ 31. We, therefore, reject mother’s argument that the permanent orders were issued by a biased judge and are therefore void. VI. Attorney Fees ¶ 23 Finally, both parties request attorney fees incurred in this appeal. ¶ 24 Mother requests attorney fees under C.A.R. 38(b) and section 14-10-119, C.R.S. 2024. Rule 38(b) allows attorney fees to be awarded for frivolous appeals and defense. Father’s briefs on appeal were not frivolous. Indeed, we affirmed multiple aspects of the district court’s orders. However, section 14-10-119 does allow a court to award attorney fees “from time to time, after considering the financial resources of both parties.” Whether an attorney fees award is warranted thus depends on the parties’ financial resources, and because we remand the issue of mother’s income to be determined by the district court, any attorney fees award should be determined on remand. See de Koning, ¶ 27. 
14 ¶ 25 Father asks that we award him attorney fees “[s]hould [we] agree with [his] initial request” for dismissal based on a determination that mother failed to preserve her arguments and that her appeal is untimely. For the reasons stated above, we do not agree with him. Thus, he is not entitled to an award of attorney fees. VII. Disposition ¶ 26 We affirm the judgment in part and reverse it in part, and we remand the case for further proceedings consistent with this opinion. JUDGE GOMEZ and JUDGE KUHN concur.