24CA2114 Peo in Interest of Prieto 02-20-2025

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 24CA2114
Pueblo County District Court No. 24MH30121
Honorable Timothy O'Shea, Judge

_____

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Julio Adrian Prieto,

Respondent-Appellant.

_____

ORDER AFFIRMED

Division V
Opinion by JUDGE SULLIVAN
Freyre and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 20, 2025

_____

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    Julio Adrian Prieto appeals the district court's order authorizing the involuntary administration of medication. We affirm.

## I.    Background

¶ 2    Prieto suffers from schizophrenia. Untreated, he exhibits symptoms that include auditory hallucinations, paranoia, delusions, mood dysregulation, aggression, and suicidal ideation. Deemed incompetent to stand trial in a criminal matter, he was admitted to the Colorado Mental Health Hospital in Pueblo (CMHHIP) in October 2024. Though he initially complied with treatment, he suddenly and intermittently refused medication a few weeks into his hospitalization.

¶ 3    The Pueblo County Attorney sought a court order authorizing the involuntary administration of three medications: olanzapine (Zyprexa), ziprasidone (Geodone), and haloperidol (Haldol).[1] Consistent with *People v. Medina*, 705 P.2d 961 (Colo. 1985), the petition asserted that (1) Prieto is incapable of participating in

---

[1] The petition also requested various forms of paliperidone (Invega), but the treating psychiatrist removed that medication from the request at the hearing.

decisions affecting his health and treatment; (2) the requested treatment is necessary to prevent a significant and likely long-term deterioration in his mental health condition or to prevent the likelihood of him causing serious harm to himself or others; (3) a less intrusive treatment alternative isn't available; and (4) Prieto's need for treatment is sufficient to override any bona fide and legitimate interest he has in refusing treatment.

¶ 4    During an evidentiary hearing on the petition, the district court heard testimony from both Prieto and his treating psychiatrist, Dr. Hareesh Pillai. At the end of the hearing, the court found that Dr. Pillai had testified "credibly and persuasively," and adopted the opinions he expressed. The court concluded that the People had proved all four *Medina* elements and issued an order authorizing CMHHIP staff to administer the requested medications to Prieto against his will.

## II.    Standard of Review

¶ 5    When, as here, a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we review the district court's legal conclusions de novo but defer to its factual findings if they have record support. *People v. Marquardt*, 2016 CO

4, ¶ 8.  We view the evidence as a whole and in the light most favorable to the petitioning party, leaving the resolution of testimonial conflicts and the determination of witness credibility solely to the fact finder.  *People in Interest of Uwayezuk*, 2023 COA 69, ¶ 57; *People in Interest of R.C.*, 2019 COA 99M, ¶ 7.  As the fact finder, the district court determines the sufficiency, probative effect, and weight of the evidence, along with the inferences and conclusions to be drawn from the evidence.  *R.C.*, ¶ 7.

## III.   Discussion

¶ 6     A district court may order the involuntary administration of medication to a patient only if the People prove, by clear and convincing evidence, each of the four elements outlined in *Medina*.[2] *Medina*, 705 P.2d at 973.  Prieto doesn't contest the second and fourth *Medina* elements.  He contends only that the evidence

---

[2] A different test applies to petitions to administer involuntary medication solely to restore competency.  *Sell v. United States*, 539 U.S. 166, 180-81 (2003).  But the parties don't dispute that *People v. Medina*, 705 P.2d 961 (Colo. 1985), applies here because the purpose of the medications is to prevent Prieto from (1) suffering a significant and long-term deterioration in his mental condition and (2) causing serious harm to himself or others in the institution.  *See Sell*, 539 U.S. at 181-83.

presented at the hearing was insufficient to prove the first and third. We aren't persuaded.

### A. The First *Medina* Element: Incompetency to Participate in Treatment Decision

¶ 7 The first *Medina* element requires that the patient is incompetent to effectively participate in the relevant treatment decision. *Id.* A court may not order the forced medication of an involuntarily committed patient unless it is satisfied that the patient's mental illness has so impaired their judgment as to render them incapable of participating in decisions affecting their health. *Id.* (citation omitted).

¶ 8 Dr. Pillai offered his expert opinion that Prieto is incompetent to effectively participate in his treatment decisions. The district court credited Dr. Pillai's testimony, adopting the doctor's opinions as its own. Still, Prieto asserts that Dr. Pillai's testimony about why he believed Prieto was incompetent had nothing to do with Prieto's judgment but rather the risk of harm that he poses to himself and others. But Dr. Pillai testified that, unmedicated or undermedicated, Prieto lacks insight into his mental illness; indeed, Prieto himself downplayed the severity of his illness, claiming that

4

he only has anxiety. And although Prieto has been able to work appropriately with the treatment team, voice his opinions on his treatment, and live a normal life when he is medicated, Dr. Pillai testified that "so far in this hospitalization, he's been unable to participate in [treatment] discussions" due to his mental instability and assaultive and aggressive behaviors. In addition, Dr. Pillai observed that, in attempting to speak with Prieto about how he wants to proceed with treatment, Prieto typically exhibits "significant thought blocking and poverty of speech."

¶ 9     Under these circumstances, we can't conclude that the evidence was insufficient to support the district court's determination that Prieto is incompetent to effectively participate in the treatment decision.

B.     The Third *Medina* Element: No Less Intrusive Treatment Alternative

¶ 10     The third *Medina* element requires, and the district court found, that a less intrusive treatment alternative isn't available. *See id.* The record supports this determination.

¶ 11     Dr. Pillai testified that he didn't believe any alternative method of treating Prieto would be both as effective and less intrusive than

the requested medications. He testified that Prieto suffers from "treatment-resistant" schizophrenia and "[t]he objective documentation" he had from Prieto's past hospitalizations indicated "that he required two antipsychotics, mainly Zyprexa and Geodon, to stabilize from an acute psychotic phase of his illness." He further testified that his treatment team has "tried to treat [Prieto] on max-dosage Zyprexa, alone, and he continues to [exhibit] assaultive behavior," so the Geodone is necessary. Likewise, Dr. Pillai testified that Haldol was necessary to treat Prieto's instances of acute agitation — which, in addition to his assaultive behaviors at CMHHIP, included punching walls, banging his head against the wall, and self-harming while in jail — and as an intramuscular "backup" option.

¶ 12     Nonetheless, Prieto points to his own testimony "assur[ing] the court that he would take the two primary medications voluntarily without a court order." As we understand his argument, Prieto implies that his willingness to do so constitutes a less intrusive treatment alternative. But he concedes that he has a history of refusing medications and his testimony regarding his present consent was inconsistent at best. When asked if he wanted the

6

option of taking the requested medications voluntarily without a court order being entered, he answered, "[M]aybe . . . not sure." And although he initially said he would agree to a consent order, he abruptly "changed [his] mind" once the court said it would prepare such an order if that was what Prieto wanted. *See People in Interest of Strodtman*, 293 P.3d 123, 133 (Colo. App. 2011) (rejecting the respondent's argument that taking her medication orally was an effective, less intrusive alternative to injection because she lacked the capacity to consistently take her medication orally). Further, Dr. Pillai testified that, in discussing Prieto's ability to take the medications voluntarily, Prieto said that he didn't suffer from a mental illness and denied that medications had any benefit.

¶ 13    Dr. Pillai's testimony about the need for the requested medications, along with Prieto's lack of insight into the benefit and need for medications and his sudden, intermittent refusals of treatment, is sufficient to support the conclusion that his stated willingness to voluntarily comply with the treatment is not a less intrusive treatment alternative.

## IV.    Disposition

¶ 14    We affirm the order.

JUDGE FREYRE and JUDGE SCHOCK concur.