25CA0374 Marriage of Stradtmann 04-23-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0374
El Paso County District Court No. 19DR30270
Honorable Jessica Curtis, Judge

In re the Marriage of

Jeremy Stradtmann,

Appellant,

and

Andrea Stradtmann,

Appellee.

JUDGMENT AFFIMRED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE KUHN
Fox and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 23, 2026

Law Office of Joel M Pratt, Joel M. Pratt, Colorado Springs, Colorado, for
Appellant

Sarah Lipka, Craig M. Carmean, Joel Minor, Ariel J. Baty, Colorado Springs,
Colorado, for Appellee

¶ 1     In this dissolution of marriage proceeding between Jeremy Stradtmann (husband) and Andrea Stradtmann (wife), husband appeals portions of the district court's permanent orders judgment awarding maintenance to wife and dividing the proceeds from the sale of the marital home.  We affirm and remand the case to the district court for a determination of attorney fees.

## I.     Background

¶ 2     The parties were married in 2014.  They have two minor children.  Husband filed for divorce in 2019; the district court entered temporary orders that same year.

¶ 3     Those orders required husband to pay wife approximately $1,300 per month for temporary maintenance, $1,000 per month for temporary child support, and $17,800 in retroactive child support.  Instead of paying wife these amounts directly, the parties stipulated that husband would pay, among other household expenses, the monthly mortgage payments for the marital home until the time of the permanent orders hearing.

¶ 4     At the permanent orders hearing in 2020, the court ordered the parties to sell the marital home; husband was to pay the mortgage payments until the sale.  The court ordered that — after

crediting husband for the temporary orders' mortgage payments and for his separate property in the house, and crediting wife for unpaid retroactive child support and maintenance — the parties were to divide the remaining equity equally. The court also ordered husband to transfer the children's bank accounts to wife. Additionally, husband, going forward, was to pay wife approximately $1,400 per month for maintenance for two years and $1,100 per month for child support.

¶ 5     Husband appealed the maintenance and child support aspects of the permanent orders. He did not appeal the permanent orders' property division. While the appeal was pending, husband made the monthly mortgage payments from July 2020 through July 2021, and he paid maintenance to wife from July 2020 through October 2021. A division of this court affirmed the district court's temporary maintenance award, reversed the temporary child support, reversed the permanent maintenance award, and remanded the case for the district court to make additional findings regarding maintenance. *In re Marriage of Stradtmann*, 2021 COA 145, ¶¶ 11, 25-26, 33-34 (*Stradtmann I*).

¶ 6     Also while the appeal was pending, husband was convicted of domestic violence against wife and served three years in a military prison.  While incarcerated, husband did not provide a real estate power of attorney to wife to sell the home as he was ordered to do, nor did he make mortgage payments.  Wife made mortgage payments during this time.

¶ 7     In 2021, wife filed a motion requesting that the court hold husband in contempt for, among other things, failure to provide the power of attorney or pay the mortgage, and failure to transfer the children's bank accounts, or the funds in them, to wife.  Also in 2021, husband filed motions to modify child support and modify or terminate maintenance.  In 2023, after delays, the court granted wife's motion and held husband in contempt.  The court's order indicated that husband could remediate the contempt by "providing [wife] reimbursement for the mortgage payments he did not make from the proceeds of the sale of the marital home or from his retirement account."  With regard to husband's motions, the court granted his request to reduce his child support payments to $10 per month.  The district court determined that *Stradtmann I* rendered husband's 2021 maintenance modification request moot.

3

However, in the contempt order, the court "reserve[d] jurisdiction [over maintenance] until the house [was] sold, and also until [husband] is released from federal military prison."

¶ 8    The home was sold in January 2024. Months later, husband was released from prison and the parties stipulated to disbursing $30,000 to each of wife and husband from the proceeds of the home's sale. In November 2024, the court held a hearing regarding maintenance and the payment of certain obligations from the equity from the home's sale already awarded to each party. At that point, approximately $194,300 remained to be divided from the home's sale. The court noted that "there [were] several accountings that need[ed] to be made based on both final orders as well as the [c]ourt's contempt order." **(TR 11/20/24, p 3)** Here is a breakdown of the court's accounting (rounded to hundreds):

|  | Credit to Wife | Credit to Husband |
|---|---|---|
| Mortgage payments for July 2020 to July 2021 |  | $23,200 |
| Separate property in home (from final orders) |  | $14,900 |
| Retroactive child support and maintenance (from final orders) | $15,800 |  |

| | | |
|---|---|---|
| Purge husband's contempt for children's bank accounts | $8,300 | |
| Purge husband's contempt for mortgage payments paid by wife | $55,200 | |
| Lump sum permanent maintenance | $12,000 | |
| Maintenance previously paid to wife | | $22,400 |
| | $91,300 | $60,500 |

| | | |
|---|---|---|
| 1/2 equity from home sale ($194,200) | $97,100 | $97,100 |
| Plus credits | $91,300 | $60,500 |
| Less other side's credits | ($60,500) | ($91,300) |
| | $127,900 | $66,300 |

## II.  Analysis

¶ 9     Husband argues that the court erred by (1) failing to explain the basis of its lump sum maintenance payment to wife; (2) considering husband's payments of the mortgage to be a form of temporary maintenance; (3) awarding maintenance from the property division; (4) failing to consider support to wife in the form of military benefit payments; (5) treating the statutory maintenance guidelines as presumptive; (6) failing to consider wife's debt; (7) punishing him for his domestic violence conviction with the

5

maintenance payment; and (8) considering his domestic violence conviction in connection with the property division. We perceive no error.

A. Relevant Law and Standard of Review

¶ 10 Section 14-10-114(3), C.R.S. 2025, specifies the process a district court must follow when considering a maintenance request. *In re Marriage of Wright*, 2020 COA 11, ¶ 13. The court must first make findings concerning (1) the amount of each party's gross income; (2) the marital property apportioned to each party; (3) the financial resources of each party; (4) the reasonable financial need as established during the marriage; and (5) whether the maintenance awarded would be deductible for federal income tax purposes by the payor and taxable income to the recipient. § 14-10-114(3)(a)(I); *see Wright*, ¶ 14.

¶ 11 After making these initial findings, the district court must determine the amount and term of maintenance, if any, that is fair and equitable to the parties. § 14-10-114(3)(a)(II). The court considers the guideline amount and term identified in section 14-10-114(3)(b). § 14-10-114(3)(a)(II); *Wright*, ¶ 15. These guidelines are a "starting point for the determination of fair and

equitable maintenance awards." § 14-10-114(1)(b)(II). And the court must weigh the statutory factors found in section 14-10-114(3)(c), including "[t]he lifestyle during the marriage," temporary maintenance amount and duration, "[t]he financial resources of the recipient spouse," the duration of the marriage, and the health of the parties. § 14-10-114(3)(c). But "the factors set forth in section 14-10-114(3)(c) are not exclusive, as the final factor is '[a]ny other factor that the court deems relevant.'" *Wright*, ¶ 15 (quoting § 14-10-114(3)(c)(XIII)). "Thus, '[t]he court has discretion to determine the award of maintenance that is fair and equitable to both parties based upon the totality of the circumstances.'" *Id.* (quoting § 14-10-114(3)(e)).

¶ 12　　Last, before awarding maintenance, the district court must find that the party seeking maintenance "lacks sufficient property, including marital property apportioned to him or her, to provide for his or her reasonable needs and is unable to support himself or herself through appropriate employment." §14-10-114(3)(d).

¶ 13　　We review a court's maintenance award for an abuse of discretion. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 58. A court abuses its discretion when its decision is manifestly arbitrary,

7

unreasonable, or unfair, or when it misapplies the law. *Id.* at ¶ 28. A court must make sufficiently explicit findings of fact to give the appellate court a clear understanding of the basis of its order. *Wright*, ¶ 20 (citation omitted).

## B. Additional Background

¶ 14 The court entered its order determining maintenance after it found the following:

- Husband earned $4,200 monthly and had new employment earning $24 per hour. Although wife had worked as a dental hygienist before the marriage, she now earned $1,800 monthly working part-time as a school paraprofessional.

- Each party "is receiving an equitable share of the equity from the marital home after the award of offsets." Husband kept significant retirement accounts. Wife's retirement account is "negligible."

- Considering their financial resources, "[b]oth parties are in a situation with potential struggle." Wife was about to move out of state and husband's resources had "also been reduced after his felony conviction."

8

- Wife had "significant financial need" "created by [husband] and the financial control he ex[er]ted over [wife] during the parties' marriage."

- Maintenance will not be taxed and will not be tax deductible.

¶ 15    The court then determined the term and amount of maintenance after considering the following, among other factors:

- The court calculated the guideline statutory amount of approximately $500 for a term of two years and one month. "A lump sum of this award would be [approximately $12,000]."

- "The family did not live lavishly but had their needs met." The family was able to take vacations and have some "nice things."

- Husband had provided "a robust amount of monies" to wife and the "pre-decree sum paid [was] in excess of [approximately $22,400]." The court also considered husband and wife's mortgage payments in a section of the order entitled "Temporary Maintenance." The court considered "the substantial temporary support paid by [husband], but [found] this matter still merits an additional award of permanent maintenance."

- Regarding wife's financial resources and needs, the court found that she was supporting two children as a single parent. She would incur moving expenses in the near future, and she would rent a home after moving. She also drove an older vehicle that would soon need replacement.

- The duration of the marriage.

- Wife's health conditions that prevented her from regaining employment as a dental hygienist.

- Finally, the court found that wife was "unable to affect stability through employment only" and that a lump sum payment was "an appropriate maintenance award."

The court then awarded wife a lump sum permanent maintenance amount of approximately $12,000 to be paid as an offset from husband's portion of the equity from the home's sale.

### C. Basis of Order

¶ 16    Husband argues that the court's maintenance order is arbitrary because it did not adequately explain its determination of wife's reasonable financial need. We are not persuaded.

¶ 17    The record shows that the court considered the appropriate factors in determining wife's reasonable needs. In addition to

considering the guideline amount and term of maintenance in section 14-10-114(3)(b), and the duration of temporary maintenance, the court considered the parties' lifestyle during the marriage and the duration of the marriage. *See* § 14-10-114(3)(c)(III), (VII), (VIII). The court found that husband and wife did not live "lavishly" but their needs were met and they had room in their budget for "nice things." It considered wife's employability, finding, with record support, that health issues prevented her from working as a dental hygienist and that she would likely continue to be employed as a paraprofessional. *See* § 14-10-114(3)(c)(V). It also found that husband earns more than wife. *See* § 14-10-114(3)(VI).

¶ 18    Finally, the court considered wife's property and her ability to provide for her reasonable needs, given her level of employment and her care for the children. *See* § 14-10-114(3)(d). After summarizing section 14-10-114(3)(d), the court found that, because wife had been absent from the workforce and had minimal work experience as a result of husband's financial control, wife would need "significant support" to "have the playing field leveled and to get back on her feet." In other words, wife would need financial

support to lead a financially comfortable lifestyle similar to her married life.

¶ 19 To the extent husband contends that the district court was required to assign a precise figure to wife's reasonable financial need, he does not cite (and we have not found) any authority supporting that proposition. Because the district court made some findings regarding wife's reasonable financial need, and because we can discern its reasoning from those findings, we decline to disturb its maintenance award on this ground. *See Wright*, ¶ 20.

## D. Mortgage Payments as a "Form of Temporary Maintenance"

¶ 20 As best we understand, husband argues that the court unfairly credited wife for the approximately $55,200 she spent on the mortgage while husband was incarcerated while also awarding wife a lump sum maintenance payment. It's true that the court discussed the approximately $23,200 mortgage payments husband had made along with the credit for the payments wife had made in the context of temporary maintenance, essentially weighing all of these payments against husband:

> So, in the Court's analysis, there is a significant chunk of time in which [husband]

was either paying the mortgage directly or credits are being given to [wife] for when she paid it, that [husband] was under an order to pay it. So that's a significant amount of money and, and the Court does consider that a form of temporary maintenance and I absolutely am considering that and I want the record to reflect that I've considered that.

¶ 21 While the court considered this point, the record shows that it didn't ultimately charge the entire amount of mortgage payments against husband. Instead, the court reimbursed husband, from the home's equity, for the amount he spent directly paying the mortgage during the appeal, just as it reimbursed wife for her payment of the mortgage while husband was incarcerated.

¶ 22 While this reimbursement calculation did result in a larger mortgage payment reimbursement to wife, we reject husband's argument that the court did not properly consider the large amount of "temporary maintenance" that he paid. The court, in its discretion, clearly considered husband's payment, under section 14-10-114(3)(c)(VIII), and determined that, despite the "substantial" amount, "this matter still merit[ed] an additional award of permanent maintenance." The court found that wife needed the lump sum payment "to further provide her the financial security

that she needs to complete her last step of essentially recovery from the financial control that was perpetrated against her during this marriage."

¶ 23 Because the record indicates that the court applied the appropriate law, and because its conclusions were supported by the record, we perceive no abuse of discretion.

E. Maintenance from Property

¶ 24 Husband argues that the court found that "he lacked the ability to pay maintenance" at all, so it must have abused its discretion by "sourc[ing] its maintenance award from the parties' property division."

¶ 25 Husband misstates the record. The court did not find that he could not pay maintenance. Instead, it found that it was concerned that husband could not afford "a robust" monthly maintenance payment based on his income.

¶ 26 To the extent husband argues that the court erred in drawing a maintenance payment from the property division, husband misunderstands the court's order, which did not disturb the property division articulated at permanent orders.

14

¶ 27    To be sure, property division and maintenance are interdependent. *In re Marriage of de Koning*, 2016 CO 2, ¶ 26. And when dividing property and awarding maintenance, a court must complete the property division before awarding maintenance. *See id.* (noting that maintenance "flow[s] from" the property division). But here, the property division was established in the permanent orders — which, as we have already noted, included a 50/50 split of the equity from the home's sale — and was not disturbed by *Stradtmann I.*

¶ 28    The court's order did not revisit the property division, but it instead imposed offsets from the otherwise equal division of the equity from the home's sale. The lump sum maintenance amount, therefore, did not stem from the property division determination but rather as one of the court's offsets. It is not error for a court to divide equity in the marital home between each party but then offset a portion of the payor spouse's interest in the equity to fund lump sum maintenance. *See In re Marriage of Icke*, 530 P.2d 1001, 1003 (Colo. App. 1974) (holding under an older version of the maintenance provisions that an equity interest in property could be a source of a lump sum maintenance payment).

15

¶ 29    We acknowledge husband's citation to *Rayer v. Rayer*, 512

P.2d 637, 640 (Colo. App. 1973), in which a division of this court,

working under an older version of the maintenance statute, noted

that that the law generally favors periodic over lump sum

maintenance payments.  Even assuming without deciding that the

statutory provisions relied on in *Rayer* are still applicable, the

specific rationale of the *Rayer* court would support a lump sum

payment here.  In *Rayer*, the court disfavored a lump sum

maintenance payment because it would have prevented the court

from retaining jurisdiction over maintenance for future

modification.  Significantly, however, the *Rayer* court explained that

lump sum maintenance payments can be awarded when special

circumstances exist, such as when — just as in this case — a payor

spouse lacks sufficient income to make a monthly payment.  *Id.*

¶ 30    Again, we perceive no abuse of discretion in the court using

the home's equity to fund a lump sum maintenance amount.

## F.    Military Payments

¶ 31    Husband argues that the court erred because it did not

consider that he "provided support from his military pay and

support through the spousal transition compensation program."  He

16

says that wife used that money to make approximately $55,200 in mortgage payments, but that wife should not be reimbursed because he "indirectly had already paid that."

¶ 32    The military, not husband, provided wife with transitional compensation for thirty-six months, from 2021 to 2024. And the record shows that after husband waived his deferred military pay, a court ordered at least some amount of it — sometime from September 2021 until February 2022 — to be paid to wife and the children.

¶ 33    Husband argues that the court did not consider that wife's needs were met "several times over" through these funds. But the record shows that the court properly considered wife's current financial circumstances when considering maintenance. *See In re Marriage of Wells*, 850 P.2d 694, 696 (Colo. 1993) (holding that a district court should reconsider maintenance based on the parties' economic circumstances at the time of remand). Regardless of the funding she may have received from the military in the past, the court found, on remand, that wife had no significant resources other than the home's equity.

## G. Statutory Guideline Not Treated as Presumptive

¶ 34 Husband, citing *In re Marriage of Vittetoe*, 2016 COA 71, ¶ 12, argues that the court based its analysis about the amount and duration of maintenance exclusively on the statutory guidelines, improperly treating the guidelines as presumptive. This argument does not advance husband's cause. Husband is correct that the division in *Vittetoe* held that the statutory guidelines for the amount and duration of maintenance are not presumptive. *Id.* at ¶ 14. However, the division explained that the guidelines are "a starting point" and not a "cap" for a maintenance determination. *Id.* at ¶¶ 12-14 (citation omitted). Here, the court used the guideline amount when it could have awarded more. We perceive no error in the court's determination of the amount and duration of maintenance.

## H. Wife's Lack of Debt

¶ 35 Husband argues that court's maintenance award was manifestly arbitrary because it was based on incomplete information. He argues that wife claimed a shortfall in monthly expenses yet had no debt. He also suggests that she did not "disclose certain bank accounts." Again, the record belies

18

husband's claim. Wife explained that she used the $30,000 payment from the sale of the house to make up the monthly shortfall in her budget.

## I. No Punitive Maintenance

¶ 36 Husband next argues that the district court abused its discretion when, according to him, it punished him for his past behavior through a maintenance award. Husband, who says that "the court found that it was using spousal maintenance to help [w]ife recover from the domestic violence," mischaracterizes the court's findings. The court made appropriate findings focused on wife's economic circumstances.

¶ 37 A court can rely on evidence of domestic violence only in so far as the evidence pertained to the parties' economic circumstances. *See In re Marriage of Hulse*, 727 P.2d 876, 879 (Colo. App. 1986) ("While evidence that husband allegedly inflicted the injuries which resulted in wife's medical expenses and decreased her earning capacity is irrelevant here, evidence of wife's medical expenses and earning capacity is relevant to her 'reasonable needs' and 'ability to support herself through appropriate employment.'" (citation omitted)); *see also In re Marriage of Casias*, 962 P.2d 999, 1002

(Colo. App. 1998) (holding that, in property division, "the trial court should be careful not to consider any marital fault or misconduct on the part of husband," but the court could "consider any economic circumstances resulting from husband's criminal conviction.").

¶ 38    Here, the court considered wife's "significant financial needs" caused by husband's "multiple years of significant financial control" — control which included prohibiting wife from working.  The court's references to husband's domestic violence served as context for wife's dire economic circumstances, not as an indication it was punishing husband.  Because the court focused on wife's circumstances, rather than husband's conviction, we perceive no abuse of discretion.

J.    Domestic Violence Conviction and Property Division

¶ 39    Husband also argues that the district court's property division order is unlawful because the court "emphasized" husband's domestic violence as a justification for an unequal property division. As we have already explained, *supra* Part II.D, the court's order appealed here did not disturb the property division determination made at permanent orders.  And to the extent husband is arguing

that the court's division of the home's equity was improper because it referenced husband's crimes, we have already addressed, *supra* Part II.H, that the maintenance determination was not based on marital fault.

## III. Wife's Attorney Fees Requests

¶ 40    Wife, arguing that husband's appeal was frivolous as filed, requests attorney fees and costs on appeal. *See* § 13-17-102, C.R.S. 2025; *see also* C.A.R. 38(b) (permitting an appellate court to award attorney fees if it determines that an appeal is frivolous). Sanctions should be imposed only in clear and unequivocal cases when the appellant presents no rational argument or the appeal is prosecuted for the sole purpose of harassment or delay. *See In re Estate of Shimizu*, 2016 COA 163, ¶ 34. Here, although husband's arguments did not prevail, we discern no basis to conclude that the appeal lacked rational argument or was filed for the purposes of harassment or delay. Accordingly, we deny wife's request for appellate attorney fees and costs under section 13-17-102.

¶ 41    Wife also seeks attorney fees under section 14-10-119, C.R.S. 2025, due to the alleged disparities between the parties' respective economic circumstances. Because the district court is better

situated to determine the factual issues regarding the parties' current financial resources, we remand the case for the district court to address this request. *See* C.A.R. 39.1; *In re Marriage of Schlundt*, 2021 COA 58, ¶ 54.

## IV. Disposition

¶ 42 The judgment is affirmed, and the case remanded for a determination of wife's attorney fees under section 14-10-119.

JUDGE FOX and JUDGE SULLIVAN concur.